### Eliza Cunningham, administratrix, *vs.* Cambridge Savings Bank.

Suffolk.   Nov. 11, 1884. — Jan. 10, 1885.   Field & Devens, JJ., absent.

In an action for personal injuries occasioned to a third person by the fall of a shed, owned by the defendant and used by A. with the consent of the defendant, A. testified that the defendant said he could not let the shed to him, but he might keep his things there if he would look after the premises till he heard from him again, and that he was to pay no rent and receive no compensation. The defendant testified that he told A. he could use the premises and take care of them, but need pay no rent, and make what repairs were necessary. Another witness testified that the defendant told A. that he could use the shed, he keeping it in shape for his occupancy such as he wanted. *Held*, that, whether A. was a tenant of the shed and bound to keep it in repair, so as to exonerate the defendant from liability for its fall, was a question for the jury.

Morton, C. J.   This is an action of tort to recover damages for an injury to the plaintiff's intestate, caused by the fall of a shed owned by the defendant.

Numerous exceptions were taken at the trial, but they have all been waived in this court, except those alleged to the refusal of the court to direct a verdict for the defendant.

It appeared that the defendant acquired its title by the foreclosure of a mortgage; and that, prior to the foreclosure one Pollard had occupied the premises as a tenant of the mortgagor, one Graves. One of the principal grounds of defence was, that, after the foreclosure and up to the time of the fall of the building, Pollard continued to occupy it as the tenant of the defendant; and that he, and not the defendant, was responsible for the dangerous condition of the building.

It is often said, in the cases, that the occupier, and not the owner, of a building is liable to third persons for damages arising from any defect. But by "occupier" is meant, not merely the person who physically occupies the building, but the person who occupies it as a tenant, having the control of it, and being, as to the public, under the duty of keeping it in repair. If the control and duty of keeping it in repair remain upon the owner, he is responsible for defects. *Lowell* v. *Spaulding*, 4 Cush. 277. *Kirby* v. *Boylston Market Association*, 14 Gray, 249. *Leonard* v. *Storer*, 115 Mass. 86.

In the case at bar, it was a question of fact whether Pollard was a tenant of the defendant, holding under such circumstances as to exonerate it from liability for the dangerous condition of the building. There was no written lease. The building was a dilapidated shed, situated in a remote part of Chelsea; some of the boards were frequently torn off by boys or others. After the foreclosure, Pollard occupied it with a wagon, under an oral arrangement made between him and the treasurer of the defendant. Their testimony as to the arrangement was not identical.

Pollard testified that he tried to hire it of the treasurer, who refused to let it, saying, "No, I could not let it to anybody, but you can keep your things here just the same, if you will look after the premises here till you hear from me again;" and that he was to pay no rent, and to receive no compensation.

Thurston, the treasurer of the defendant corporation, testified as follows: "I did not feel authorized to let the premises in any way except in this way, — that I would consult with the

trustees at their next meeting; he could go on and use the premises as he had been doing, he need not pay us rent, but take care of the premises, it being so far out of town, — take care of them, and make whatever repairs were necessary." On cross-examination, the witness testified as follows: "I told him, in substance, that I could not do any more than this, to give him the use of it until I should consult with the trustees; if they made any objections I would notify him, if not, he might consider that he could have the use of it the same as he had been having it from Graves, but instead of paying rent he should keep the building in repair and look after the property." This witness does not here or in any other part of his testimony say that Pollard was to be under any obligation to keep the building in repair. It is the fair inference that what he meant was, that, if Pollard found that any repairs were needed to make the shed fit for his use, he was not to call upon the defendant, but must make them himself. This is confirmed by the testimony of Rugg, a witness who was present when the arrangement was made, who says, "Thurston spoke of his remaining there as he had been, provided he would make the necessary repairs, he keeping the building in shape for his occupancy such as he wanted."

It is to be observed that, in stating what the arrangement was, the treasurer, in the cross-examination, uses words differing from those used in the direct examination. A case is thus presented where there is no precise contract proved which is to be construed by the court. The witnesses differ in their statements, and, from the necessity of the case, it must be left to the jury to determine what the arrangement between the parties was.

The Superior Court properly left this question to the jury; and we think they were justified in finding that Pollard was merely an agent of the defendant, occupying under a license; and that he was not a tenant, with the rights and liabilities of that relation.                    *Exceptions overruled.*

*G. S. Hale & W. B. Durant,* for the defendant.

*R. M. Morse, Jr.,* (*W. H. Towne* with him,) for the plaintiff.