## JENNINGS *v.* VAN SCHAICK.

*N. Y. Court of Appeals; February,* 1888.

[Affirming 13 *Daly*, 438.]

1. *Negligence; use of sidewalk; traveler not bound to look out for openings.*] One injured by falling into an open unguarded coal-hole, in the sidewalk of a crowded city street, is not negligent in omitting to look out for such openings though knowing of their existence, as he has the right to assume the safety of the sidewalk, and that the openings are securely covered or properly guarded.*

---

* So one crossing a city street is not, as in the case of a railroad crossing, chargeable with negligence, merely because not first pausing and looking both ways. Moebus v. Hermann, 38 *Hun*, 307; aff'd in Court of appeals, Feb. 10, 1888.

Jennings v. Van Schaick.

2. *Coal-hole in sidewalk; municipal consent inferred from long use.*] Although no formal municipal license to the owner to make a coal-hole in the sidewalk in front of his premises is shown, yet authority to do so may be reasonably inferred from an acquiescense of ·eighteen years without objection from the city.

3. *The same; landlord's liability; apartment house.*] The rule which holds the tenant alone liable, and exempts the landlord, for injuries occasioned by the tenant's negligence in leaving open a coal-hole in the sidewalk in front of the demised premises, does not apply where the building is leased in flats or apartments, and the owner remains in control of the sidewalk, halls, coal vaults, etc., and hires a janitor whose duty it is to open the coal-hole when coal is to be delivered to the tenants, and the janitor negligently omits to guard the hole during the delivery, and a passer-by is injured.*

4. *The same; nuisance.*] A coal-hole left open and unguarded in the sidewalk, though the opening was made by license of the city, is a nuisance, and an action for injuries occasioned thereby is an action founded on a wrong.†

Appeal from a judgment of the New York court of common pleas affirming a judgment of that court entered upon the verdict of a jury in favor of the plaintiff and an order denying a motion for a new trial.

Catherine Jennings brought this action against Henry Van Schaick for personal injuries sustained by falling into a coal-hole in the sidewalk in front of an apartment house in the city of New York, owned by the defendant.

The accident occurred during the delivery of coal to Dannat, a tenant of an apartment, the cover of the coal-hole having been unfastened and removed for that purpose by Roberts, the janitor of the premises.

Upon the first trial, plaintiff had a verdict for $10,000 damages, but upon appeal the judgment and order denying a new trial were reversed upon the ground that the damages were excessive (Decision reported in 13 *Daly*, 7).

---

* See note at the end of this case.

† As to mandamus to remove street obstruction, though licensed, see People *ex rel.* Mullen *v.* Newton, p. 387 of this vol.

Upon the second trial plaintiff had a verdict for $4,000 damages, and defendant appealed.

*The General Term* affirmed the judgment, and order denying a motion for a new trial, holding that the coal-hole having been maintained for nearly eighteen years without any permission or license therefor, on the inner part of the sidewalk of a crowded thoroughfare, and left unprotected by any crib or curb while open, to the knowledge of an employee of defendant, the owner, who rented the nuisance with the premises, the latter must be considered as continuing responsible for the nuisance. And the court further held that the provisions of the city ordinances requiring inclosure of openings on the sidewalk by a box or a crib were not to be construed as implying that the box or crib should not be in place when the opening was in actual use (Decision reported in 13 *Daly*, 438).

From the judgment of the General Term defendant took this appeal.

*A. H. Stoiber*, for the defendant, appellant.

*Jeroloman & Arrowsmith*, for the plaintiff, respondent.

FINCH, J.—The plaintiff fell into an open coal-hole, left uncovered and unguarded in a crowded city street. She had a right to assume the safety of the sidewalk, and so was not called upon to give attention to her steps until in some manner warned of danger. Undoubtedly she knew that vaults and coal-chutes were common under and adjoining the sidewalks, and that through the ordinary openings coal was deposited in such vaults. But she had a right to assume that they were securely covered, or if left open were guarded by some one to give warning, or by the crib or box prescribed by the city ordinance. Neither protection was provided in the present case. It was said that loose coal lay around the opening, and its presence should have warned the plaintiff of danger. In a crowded street it might not

Jennings *v.* Van Schaick.

be observed in time to avoid a fall; but she swears no such sign of possible peril was present, and, though contradicted, we must take the verdict of the jury as settling the question of fact in her favor. Somebody, therefore, was responsible for the injury.

It does not appear that the defendant, who owned the premises, had ever obtained from the municipal authorities any formal license or permission to construct the opening in the sidewalk; but such authority was a reasonable inference from an acquiescense of eighteen years without objection from the city. Assuming, however, that authority for the construction had been granted, the duty of safe covering and of protection when open remained; and if not performed, the unguarded opening became at once a wrong and a nuisance. Where an owner builds a coal vault under or adjoining the sidewalk with an opening to the surface by the permission of the municipality, and constructs it in all respects safely and properly, and then rents the premises to a tenant who takes the entire possession and occupation, the landlord reserving no control, and the tenant in his use of the property carelessly leaves the coal-hole open, whereby some one is injured, it is the tenant and not the landlord who is liable; since the latter has neither created nor maintained a nuisance, nor been guilty of any negligence or wrong.

But that is not this case. The building was rented in flats or apartments. The owner remained in control to some extent, and hired and employed a janitor to take care of the premises. He controlled the halls and some portion of the basement, and especially the coal vaults, in one of which was stored the coal for the building, and in the other that for the tenants. The coal for the building was for the use of the janitor and the engineer. The cover to the sidewalk-opening was held in its place and so made safe by a chain fastened underneath. When this coal was delivered the janitor took the ticket and unfastened the chain so that the cover could be removed. His employment by the

tenants was to deliver the coal to their rooms.   To open the coal chute and allow it to be received was his duty as janitor, under his employment by the owner.   That duty he neglected to perform properly and permitted the cover to be removed without the least attention to the safety of those passing by.   There was thus enough in the case to make the owner responsible for the injury.   The evidence permitted an inference by the jury that the landlord controlled the use, and did not admit the inference involved in the requests to charge which were refused that the tenants employed the janitor to open the cover and see to the delivery.   Roberts said his employment by Dannat, the tenant, was to deliver coal to his rooms, and the effort to make him say differently failed.

The exceptions relied upon by the appellant were mainly involved in two propositions of the defense the one that the action was not founded on a wrong, as charged by the court, and the other that the jury were at liberty to find from the evidence that the janitor was the servant of the tenant in the use and management of the coal-hole, and not of the defendant.

We have assumed that from long use and acquiescence the consent of the municipal authorities to the construction of the coal-vault and its aperture should be inferred, and so the structure was not, in and of itself, a nuisance.   But the consent of the city is conditional upon certain modes of use, and if the opening is left unguarded it becomes at once a trap and a nuisance.   No consent to leave it open and unprotected can be possibly claimed, and so the act is a positive wrong on the part of the person or individual leaving it open, and without warning to the public either by some one guarding it, or by a box or crib placed over it as required by the city ordinance.   The court, therefore, did not err in saying that the action was founded upon a wrong, and in treating the open and unprotected coal-hole as a nuisance.

Thereupon the question arose who was guilty of the

wrong and responsible for the nuisance, and that ended in the inquiry who controlled the use of the coal-hole. The janitor controlled it beyond question. He occupied the basement and had the care of whatever about the house was for the common convenience of the tenants. If the cover on the sidewalk was so made that it could be opened by anybody from the outside maliciously or accidentally the construction was faulty. But that apparently was not the case, and the janitor himself scarcely denies that he loosened the chain and allowed it to be opened. He was the servant of the owner, put there to control and care for the premises. Until some evidence was given to change that relation the owner alone was responsible for the wrongful management of the coal-hole. We discover no such evidence. The janitor testified that the coal-hole in question here was " used for the tenants," that he was employed by some of the tenants to " deliver coal to " their rooms or apartments, and that answer being unsatisfactory was followed by a very leading question, viz.: " To see that it was delivered in the house?" Which the witness answered by saying, " I don't take it in that consideration." None of the evidence of the witness tended to show that this coal hole was put under the control or care of any one or all of the tenants, and the requests to charge that the jury might find that it was in the exclusive use of the tenants and so the landlord not liable, and that if they found that what the janitor did " in regard to the receipt, delivery or removal of the coal," was for the tenant, Mr. Dannat, " and not for or in the service of the defendant," then the defendant is not liable, were properly refused. There was no evidence to justify such finding by the jury. Admitting that it was no part of the janitor's duty to " assist " in putting in or receiving coal for the tenants, it by no means follows that the opening and closing of the cover and its general control did not devolve upon him as the servant of the owner. The landlord, through his janitor, retained the general possession of the house and had not absolutely parted with its control.

It remained his duty to care for the sidewalks, to remove the snow, and keep them safe, and in no respect had he shifted the duty upon those occupying rooms or apartments in the building. He never transferred, and they never accepted any such duty or obligation. It attached to his ownership, and could only be removed by a complete transfer of the possession which left no power of control in him.

For these reasons we think no error was committed, and the judgment should be affirmed with costs.

All concur, except EARL and PECKHAM, JJ., not voting.

### NOTE ON LIABILITY FOR CONDITION OF APARTMENT HOUSE.

Compare the following recent cases illustrating further the liability of the landlord of a building let in apartments or floors to different tenants, and mutual rights and obligations of the tenants.

The owner of a tenement house, let not as an entirety, but in separate apartments to different tenants, the common passage-ways being reserved, is bound to keep such passage-ways in repair, and is liable to a tenant for an injury caused by his neglect to do so. Dowd *v.* Fitzpatrick, 18 *Weekly Dig.* 343.

To the same effect, Donohue *v.* Kendall, 50 *Super. Ct.* (*J. & S.*) 386.

But to charge him with liability it must be shown that he has neglected, after having knowledge or notice of the unsafe condition of the passage-ways, to repair promptly, or that he has omitted to use reasonable means to ascertain the facts. Henkel *v.* Murr, 31 *Hun*, 28.

Followed, and the rule applied, where the landlord neglected to repair a leaky roof. *N. Y. City Ct.* 1884, Spatz *v.* Scheiner, *N. Y. Daily Reg.* Feb. 13, 1884.

*It seems* that a lessor who omits to keep in order water-pipes in rooms under his control, thus causing damage to his lessee of adjoining apartments from an overflow of water, may be held liable either for a breach of the covenant of quiet enjoyment which the law implies in a lease, or for failing to keep a promise, made after notice, to remove the cause of damage. Vann *v.* Rouse, 94 *N. Y.* 401.

A tenant from year to year renting part of a dwelling-house, which is also occupied by other tenants, in the absence of an express agreement, is under no obligation to make repairs of a general, substantial and lasting nature. If the landlord, upon whom this duty rests, allows the premises to become so defective as to tumble down, he is answerable to the tenants for injury to their property caused thereby. Bold

v. O'Brien, 17 *Weekly Dig.* 466; rev'g *N. Y. Daily Reg.* Oct. 31, 1882.

The owner of an entire building is under a duty to a tenant of a part only to keep the building in ordinary repair, and is liable to such tenant for an injury arising from want of skill or care, on the part of a mechanic employed in making a necessary alteration. Worthington *v.* Parker, 11 *Daly*, 545.

Where the owner of a building furnishes an elevator for the convenience of his tenants to be used in delivering goods, and places it in charge of a janitor, he is under obligation to those delivering goods to his tenants to keep it in a safe condition for customary use, and failure to do so is negligence. Ritterman *v.* Ropes, 51 *Super. Ct.* (*J. & S.*) 25.

Where plaintiff tripped on a hall mat in an apartment house belonging to defendant, after notice to defendant to replace it on account of its dangerous condition,—*Held*, that the question of negligence was one of fact for the jury. Neyer *v.* Miller, 51 *Super. Ct.* (*J. & S.*) 516.

An action lies by a tenant of a part of a building against his landlord, who occupies other parts, to recover damages for negligence in allowing injurious substances to leak through from defendant's rooms into plaintiff's rooms; and the principle that as between landlord and tenant, the landlord is not bound to keep in repair, without express contract, does not avail as a defense, if negligence be shown. Stapenhorst *v.* American Maufacturing Co., 15 *Abb. Pr. N. S.* 355; s. c., 36 *Super. Ct.* (*J. & S.*) 392.

A lessor of the upper stories of a building is liable for injuries the tenant sustains by falling through a hatchway in the passage to the tenant's apartments, negligently left open by the landlord's servant. Totten *v.* Phipps, 52 *N. Y.* 354. Distinguished in Donnelly *v.* Jenkins, 58 *How. Pr.* 252 (*below*).

In an action against the tenant of rooms in an apartment house, for rent, it appeared that the steam heat agreed by the landlord to be supplied was inadequate; that additional heat became essential to a proper enjoyment of the premises; that the flues and chimneys were defective or improperly constructed; that her apartments were often filled with dense smoke, and that the elevator service was inefficient.—*Held*, that these grievances were an obstruction to the beneficial enjoyment of the premises, constituting a constructive eviction and justified the tenant's abandonment. *N. Y. City Ct.*, Lawrence *v.* Burrell, 17 *Abb. N. C.* 312.

Where a landlord who leases part of a building to a tenant, the latter covenanting to keep the plumbing in the demised portion of the building in repair, omits properly to repair and preserve the plumbing

in the rest of the building, so that the demised premises become by reason thereof untenantable and unfit for occupancy, which necessitates the tenant leaving the building, the landlord cannot recover for rent subsequently accruing. St. Michael's Prot. Episc. Ch. *v.* Behrens, 10 *Civ. Pro. R. (Browne)* 181.

The owner of a tenement house, in the absence of proof of faulty construction, or personal negligence, is not liable for an injury sustained by a visitor to one of his tenants, caused by a fall into the cellar through a trap-door which had carelessly been left open. Kaiser *v.* Hirth, 36 *Super. Ct. (J. & S.)* 344.

The fact that the defendant occupied a portion of the premises raises no presumption against him. Each occupant is liable for his respective negligence, and there is no presumption against any particular one. *Ib.*

The same measure of liability for injuries sustained by negligence of a landlord extends to one socially visiting or calling upon a tenant as protects the tenant himself,—*So held,* where a person calling upon the tenant was injured through a defect in a hall not demised to the tenant, but which he had a right to use for ingress and egress. Henkel *v.* Murr, 31 *Hun,* 28.

A. and B. were tenants of separate floors of a building, and used an elevator therein in common. In an action against them for damages for the death of the plaintiff's intestate, resulting from falling through the elevator hatchway, it appeared that the elevator was properly constructed and properly protected for accidents arising from negligence, and it seemed likely that the accident occurred by reason of the door to the elevator being negligently left open, but no evidence was offered as to whether this was done by A. or B.—*Held,* that a verdict against both could not be sustained, as the defendant who left the door open was alone liable. Donnelly *v.* Jenkins, 9 *Daly,* 41.

Under the acts relating to buildings in the city of N. Y. [*L.* 1871, c. 625, § 16, am'd *L.* 1874, c. 547, § 5], providing that each elevator way or hoist way in a building shall be protected on each floor by a railing and trap-doors, and that "such trap-doors shall be kept closed at all times except when in actual use by the occupant or occupants of the building having the use and control of the same,"—when there is more than one occupant, having such use and control, the duty of closing such trap-doors is imposed by the statute upon the occupant or occupants whose use of the elevator requires the opening, and whose disuse of the same permits the closing of the trap-doors, and none of such occupants can be rendered liable for the negligence of another. Harris *v.* Perry, 89 *N. Y.* 308, rev'g 23 *Hun,* 244.

Where the lessee of a flat—a floor in a building let to several fami-

lies—covenants to do all repairs to plumbing work, pipes and fixtures, the existence of sewer gas endangering the tenant's life and health, in consequence of which he quits the premises, is no defence to an action for rent, assuming such a nuisance to constitute an eviction, unless it is shown that it arose from some defect in the premises retained by the landlord. *N. Y. Com. Pl.*, Sutphen v. Seebass, 14 *Abb. N. C.* 67 *n.*

The omission of defendants, occupying a second story, to turn off the stop-cock in the water pipes, relying on the habit of other tenants on the first floor to turn off the water there,—*Held*, not to sustain an action by the tenant of the cellar, for the resulting injury to his goods, when by the omission of the tenants of the first floor to turn off the water it rose and overflowed through the open cock on the second floor. *N. Y. City Ct.*, Clarke v. Anderson, *N. Y. Daily Reg.*, March 9, 1885.

*It seems*, that a tenant has a right to enter a portion of the building outside of his own premises, to repair a leak in the water pipes. Coddington v. Dunham, 35 *Super. Ct. (J. & S.)* 412.