JOHN O'BRIEN, Appellant, *against* LOUIS GREENBAUM, Respondent.

*N. Y. Supreme Court, First Department, General Term, March 29th, 1889.*

1. *Change of claim.*—A cause of action cannot be changed from negligence to one for maintaining a nuisance.

2. *Negligence.—Landlord and tenant.*—In an action depending upon negligence by reason of the broken and unsafe condition of leased premises, negligence on the part of the landlord can only be established by showing either that at the time of the renting, the premises were in such unsafe condition, or that at the time of the happening of the accident he had some control thereof.

· See Note 17 at the end of this case.

Appeal from a judgment dismissing the complaint at the circuit.

*Samuel Ashton,* for appellant.

*Hays,* for respondent.

VAN BRUNT, P. J.—This action was brought to recover damages sustained by the plaintiff, by reason of the defendant's negligence in allowing a cellar door covering the openng to a cellar on premises No. 313 East Thirty-eighth street, New York city. of which it was alleged the defendant was the owner, to become and remain out of repair, and in a broken and unsafe condition. It appears from the evidence in the case, that defendant was the landlord of the premises in question, and that the store and cellar thereof had been rented to one Thomas McCurran, who kept a liquor store on the premises above the cellar, and used the cellar for storing barrels. But it did not appear that the defendant had any control of any kind over the cellar, or any right to enter upon the premises for the purpose of making repairs or doing any other act; and the only testimony that the defendant

had anything whatever to do with the premises, was the evidence of a witness who testified that he collected the rent from the tenants, and paid them over to defendant, and that defendant employed him to collect such rents; and also the evidence of one Fromme, who swore that when he served the summons and complaint herein, he asked defendant if he was the owner, and he said he was. It further appeared from the evidence, that the opening in question forming the entrance to the cellar, had been built for more than eighteen years, and that this opening has always been covered by wooden cellar doors, one of which had been broken a short time before the happening of the accident, by a horse coming out of an alley next door to the premises, stepping upon the door. There was no evidence that defendant had any knowledge of a broken door, or of a barrel having been placed in the opening. The testimony further showed that the plaintiff, at the time of the accident, was twelve and a half years of age, and resided directly opposite the premises in question, and that for five years he had resided at No. 312 East Thirty-eighth street, which is nearly opposite said premises; that he had worked for about a month and a half as cash boy for John E. Corcoran, and subsequently as call boy for a Mr. Leisener. Prior to being employed in those capacities, he had been to a private school in Thirty-sixth street, and could read and write, and had studied arithmetic, grammar and history. The testimony shows that the boy, although only twelve and a half years old, was an intelligent, bright and active youth. It further appeared that he had been in the habit of playing on the street, on both sides of the way, and was well acquainted with the premises in question, the cellar door and its surroundings, and that he knew the cellar door was broken, and that a barrel had been put in there, and that he had played there every evening around the door after coming home from work. Before the accident, he was thoroughly acquainted with the situation of the premises,

and the condition of the opening into the cellar, and knew the dangers incident to persons getting into the two feet space between the barrel and the window. Although there was plenty of room on the sidewalk between the barrel and the curb, he went up to the barrel and leaned his hand upon it, when the barrel tipped up, and he fell down into the cellar. Upon this state of the evidence, a motion was made at the close of the plaintiff's case, to dismiss the complaint, which motion was granted.

It seems to be sought to support the plaintiff's claim in this action upon the ground that, because no permit had been shown for the maintenance of this cellar opening, it was a nuisance, and its construction was a wrongful act upon the part of the defendant. It does not seem as though the cause of action could be changed from one of negligence to an action because of maintaining a nuisance, as is attempted to be done. The complaint clearly sets out an action based upon the negligence of the defendant. This was the cause of action which he was called upon to meet, and he was not required to anticipate that a claim would be made that the original construction was unlawful or wrongful. He was only required to meet the allegation that it was the duty of the defendant to keep the premises in a reasonably safe and proper condition, and that he negligently and carelessly allowed the same to remain in a broken and unsafe condition, and out of repair, etc. It is immaterial, therefore, as far as this action is concerned, whether this excavation was rightfully or wrongfully maintained.

The action depending upon the negligence of the defendant, such negligence must necessarily be established; and it can only be established by showing either that at the time of the renting of these premises this cellar door was in this unsafe condition, or that at the time of the happening of the accident he had some control thereof. It appears, however, that the premises were rented, and that they were

being occupied by some other party, and under these circumstances there is no presumption that the landlord retains the control of any portion of the premises. The tenant is presumed to be entitled to the exclusive occupation of those portions of the premises which he had rented. The tenant in this case had rented the store and cellar, and used this opening into the cellar for the purposes of his business.

It would appear, therefore, that the landlord had no control over these premises while they were in the custody of his tenant, and there being no proof that they were out of repair at the time they were let, he cannot be charged with having been guilty of any negligence with reference to the maintenance thereof. If any person has been guilty of negligence, it is the tenant who is in occupation of the premises, and for his fault the landlord is not liable.

The judgment appealed from should be affirmed, with costs.

BRADY and DANIELS, JJ., concur.

---

*Note 2.*

NOTE ON THE LIABILITY OF LANDLORDS TO TENANTS AND OTHER PERSONS FOR NEGLIGENCE, FRAUD, NUISANCE, ETC.

*For negligence, fraud, etc.* Where there is no covenant on the part of a lessor, and he is under no obligation, to repair the buildings upon the demised premises, and their condition is equally as well known to the tenant as to him, there is no basis for an action against him, for negligence, by the tenant or any servant of his, or person standing in his place, from the fact that the premises were out of repair. O'Brien *v.* Capwell, 59 Barb. 497.

The mere agreement of a landlord to repair in no way contemplates any destruction of life or casualities to the person or property of any one, which might accidentally result from an omission to fulfil the agreement in every respect. Flynn *v.* Hatton, 43 How. 333. For the proposition that a landlord under contract generally to keep the premises in repair is, for a breach thereof, also further liable to his tenant, as in tort, for willful refusal or neglect to perform his obligation, no warrant is to be found in principle or authority. Id. Spellman *v.* Bannigan, 36 Hun, 174.

Note on the Liability of Landlords to Tenants and other Persons.

An owner of a building, who is in possession of all of it except the part occupied by a sub-tenant, owes him the duty so to use and repair it as not to injure him. McVie v. McNaughton, 21 W. Dig. 89. In this case, the owner, without the permission of the under-tenant, employed a contractor to put a new roof on the building, who notified the said tenant to protect his goods, as the new roof could not be finished on the same day that the old roof was taken off, and the latter promised to do so, but a heavy rain came on and damaged his goods ; and it was held that the owner was liable.

In Clancy v. Byrne, 56 N. Y. 129, it was held that, if premises are in good repair when demised, but afterwards become ruinous and dangerous, the landlord is not responsible therefor, either to the occupant or to the public, unless he has expressly agreed to repair, or has renewed the lease after the need of repair has shown itself. And this rule applies to a lessee who has in turn sub-let, and is out of possession, as well as to an owner and prime lessor.

A lessor, who leases certain rooms in a building, in front of which there is a platform which is necessarily used in ingress and egress to and from the demised rooms, and is in an unsafe condition, is not liable for injuries arising from the demised premises being unsafe, unless it is shown that he knew, or had reason to know, that the platform was dangerous for any use for which the premises were let, and failed to disclose its condition, or that he had agreed to repair it or make it safe, and omitted to do so. Donner v. Ogilvie, 49 Hun, 229.

In Nelson v. Liverpool Brewing Co., L. R., 2 C. P Div. 311, it was held that a landlord is liable for an injury to a stranger by a defective repair of demised premises only when he has contracted with the tenant to repair, or where he has been guilty of misfeasance, as, for instance, in letting the premises in a ruinous condition, and that in all other cases, he is exempt from responsibility for accidents happening during the tenancy. And see Rosewell v. Prior, 2 Salkend, 460; Todd v. Height, 9 C. B. N. S. 377; Knauss v. Brua, 107 Penn. 85; Fow v. Roberts, 108 Id. 489; City of Lowell v. Spaulding, 4 Cush. 277; Lorne v. Farren Hotel Co., 116 Mass. 67; Cunningham v. Cambridge Saving's Bk. 138 Mass., 480; Dalay v. Savage, 145 Id. 38; Nugent v. B. C. & M. R. R. Co., 80 Me. 62; Joyce v. Martin, 15 R. I. 558; Owings v. Jones, 9 Md. 108; Albert v. State, 66 Id. 325.

A lessor of buildings in the absence of fraud or any agreement to that effect, is not liable to a tenant, or others lawfully upon the premises by his authority, for their condition, or that they are tenantable and may be safely and conveniently used for the purposes for which they were apparently intended. Jaffe v. Harteau, 56 N. Y. 398. In this case, certain premises of defendant were sub-let to plaintiff's husband and occupied by the latter as a residence for himself and family. Plaintiff was injured by the explosion of a boiler in the kitchen occasioned by the absence of a safety-valve;

Note on the Liability of Landlords to Tenants and other Persons.

but it did not appear that defendant knew of, or had any reason to suspect, any defect, or that any danger was to be apprehended from the use of the boiler for the purpose intended. It was held that the facts did not establish any liability on the part of defendant.

If a landlord lets premises and agrees to keep them in repair, and he fails to do so, in consequence of which any one lawfully upon the premises suffers injury, he is responsible for his own negligence to the party injured. Edwards *v.* N. Y. & H. R. R. Co., 98 N. Y. 245. If he demises premises knowing that they are dangerous and unfit for the use for which they are hired, and fails to disclose their condition, he is guilty of negligence which will in many cases impose responsibility upon him. Id. And if he creates a nuisance upon his premises, and then demises them, he remains liable for the consequences of the nuisance as the creator thereof, and his tenant is also liable for the continuance of the same nuisance. Id. But where the landlord has created no nuisance, and is guilty of no willful wrong, fraud or culpable negligence, no case can be found imposing any liability upon him for any injury suffered by any person occupying or going upon the premises during the term of the demise; and there is no distinction stated in any authority between cases of a demise of dwelling houses and of buildings to be used for public purposes. Id.

If one builds a house for public amusements or entertainments, and lets it for those purposes, knowing that it is so imperfectly and carelessly built that it is liable to go to pieces in the ordinary use for which it was designed, he is liable to the persons injured through his carelessness. Edwards *v.* N. Y. & H. R. R. Co., *ante.* But in the absence of evidence tending to show that the landlord knew, or had reason to suppose, that there was some defect in the building, or that it was of insufficient strength to hold the number of people who could be contained therein, or that it would be used in such a way as to endanger its security, he is not guilty of actionable negligence. Id. There is no case which holds that the negligence of a landlord is to be inferred simply from the fact that a structure which he lets breaks down. It may break down under such circumstances that the inference of negligence is irresistible and may properly be drawn; but the facts must show that he knew, or had reason to know, that the structure was dangerously weak and imperfect. Id.

In Ryan *v.* Nelson, 87 N. Y. 471, the owner of a building, provided with machinery run with steam power, rented one floor for the purposes of a laundry, and furnished power, which was supplied by means of a revolving shaft. The lessee put a partition through the room near the shaft, and plaintiff, who was in the lessee's employ, in attempting to pass between such partition and the shaft, was caught by the latter and injured. In an action for damages, it was held that the owner was not liable, and that, as the premises had been delivered to the tenant in a suitable condition to serve the purpose for which they were rented, if alterations were required

62      O'BRIEN *v.* GREENBAUM.

Note on the Liability of Landlords to Tenants and other Persons.

to fit them for safe or convenient occupation by him or his employees, it was his duty, not that of the owner, to make them.

In Spellman *v.* Bannigan, 36 Hun, 174, the owner leased certain premises to plaintiff for one year and agreed to put the house in good repair and keep it so during the term. She had frequently used, from the time she took possession in May until October, the stairs leading from the first floor to the cellar, when, as she was coming up the stairs from the cellar, they fell and she sustained injuries. It was not shown that the owner knew of any defect in the stairs, or that he had been requested to make any repairs to them. It was held that an action could not be maintained against the owner upon the ground of either negligence or breach of covenant to repair.

Where a lessor, who has at least an implied license to go into a chamber of the demised tenement with a lighted candle after property he is allowed to keep there, thus enters, and the house soon after takes fire and with its contents is consumed, the tenant cannot maintain an action against the lessor to recover the value of his goods destroyed, without proof of the lessor's negligence or carelessness causing the fire. Lansing *v.* Stone, 37 Barb. 15.

In Hine *v.* Cushing, 53 Hun, 519, the plaintiff was a tenant in the occupancy of a portion of a building under the defendant who was also the owner of the adjoining building which was in the process of repair under the control of his agent. A new pier was built and when the building was allowed to settle upon it, it gave way thereby causing the fall of the upper floors. Fires were thus communicated to the building and to the adjoining one occupied by plaintiff and damaged his goods. The two buildings were communicating, used as a single building and had a common stairway and elevator. It was held that, as the fire was caused by negligence of his agent, defendant was liable for the loss. See Judd & Co. *v.* Cushing, 50 Hun, 181.

And in Butler *v.* Cushing, 46 Hun, 521, an action was brought by another tenant against the landlord upon the same state of facts arising out of the same incident, and it was held that, though the landlord had the right to repair, and even to raise the floors, he was not, if he thereby forcibly dispossessed the tenants and destroyed their property, excused even though he could not be shown to have been guilty of any negligent act in doing the work; and that the damages which resulted from the fire, kindled by the fires in the building displaced by the fall, were properly chargeable to the landlord, as they were the direct results of the act done.

In Ferguson *v.* Hubbell, 97 N. Y. 507, the owner leased to a party certain lands on shares and agreed to pay him a specified sum per acre for clearing so much of the land as he chose to clear. In doing such clearing, he set fire to some brush and wood, and the fire spread to plaintiff's adjoining lands and burned the buildings thereon, and it

was held, in an action to recover the damages, that in clearing the land, he was an independent contractor, and not a servant or employee, and that the owner was not liable for his negligence in doing the work.

When a building has been injured by fire, the landlord cannot be compelled to rebuild or repair it for the benefit of his tenant, unless he has so covenanted. And he owes no greater obligation to a tenant who has hired a portion of the building than to the lessee of the whole building. Doupe *v.* Genin, 45 N. Y. 119. Accordingly, where the roof and upper story were partly destroyed by fire, and damage resulted to a tenant of the basement by reason of the delay in reparing the roof, it was held that the landlord was not liable for any delay in proceeding with due diligence after the fire to put on the roof and protect the tenant's property from the weather.

In Buddin *v.* Fortunato, N. Y. Com. Pl., June 2, 1890, it was held that a lessee of premises may recover for injuries thereto, where the landlord is not bound by covenant to repair, and it appears that the lessee was obliged to make repairs, to protect his property and render the building tenantable

A lessee occupying real estate may become liable to a stranger by negligently suffering the demised premises to become dangerous. Odell *v.* Solomon, 99 N. Y. 635. But this liability is independent of any contract between the lessor and lessee, and is founded upon culpable negligence. Id. The lessee is not, as to third persons, a guarantor of the safety or condition of the premises, but is bound only to reasonable care, in his use and occupation of them, so that they may not cause injury to others. Id.

*Nuisance.*]—The liability of an owner of leased premises is based upon one of these grounds, viz: That he owned, or had a right in, the premises, and leased with the nuisance upon them; that he was in the possession of the premies and used them in their defective condition; that he was under a contract, enforceable by plaintiff, to keep the premises in repair, and failed so to do; that he, in the first instance, created the nuisance, and put it in the power of others to continue it, or, that, being a municipal corporation, there was a duty upon it to repair. Clancy *v.* Byrne, 56 N. Y. *ante.*

Where the landlord has no control over leased premises while in the custody of his tenant, he cannot, unless there is proof that they were out of repair at the time they were leased, be charged with any negligence in respect to the maintenance thereof. O'Brien *v.* Greenbaum, reported above. The tenant is presumed to be entitled to the exclusive occupation of the premises which he has rented. Id. In such case, if any person has been guilty of permitting the premises to be and remain in an unsafe condition, it is the tenant, and for his fault the landlord is not liable. Id.

It is not the general rule that an owner of land is, as such, responsible

Note on the Liability of Landlords to Tenants and other Persons.

for any nuisance thereon. It is the occupier to whom such responsibility generally and *prima facie* attaches. Ahern *v.* Steele, 115 N. Y. 203; Kirby *v.* Boylston Market Ass'n, 14 Gray, 249; City of Lowell *v.* Spaulding, 4 Cush. 277; Inhabitants of Oakham *v.* Holbrook, 11 Id. 299. An owner is liable in the following cases: if he creates a nuisance and maintains it; if he creates a nuisance and then demises the land with the nuisance thereon, though he is out of occupation; if the nuisance was erected on the land by a prior owner, or by a stranger, and he knowingly maintains it; if he has demised premises and covenanted to keep them in repair and omits to repair, and thus they become a nuisance; or if he demises premises to be used as a nuisance, or for a business, or in a way, so that they will necessarily become a nuisance. Ahern *v.* Steele, *ante.* But an owner who has demised premises for a term during which they become ruinous, and thus a nuisance, is not responsible for the nuisance, unless he has covenanted to repair. Id. So, a grantee or devisee of premises, upon which there is a nuisance at the time the title passes, is not responsible for it until he has had notice thereof, and, in some cases, until he has been requested to abate the same. Id.; Penruddock's Case, 5 Coke, 100b.; Pierson *v.* Glean, 14 N. J. Law, 37; Plumer *v.* Harper, 3 N. H. 88; Woodman *v.* Tufts, 9 N. H. 88; Eastman *v.* Company, 44 N. H. 144; Carleton *v.* Redington, 21 N. H. 291; Johnson *v.* Lewis, 13 Conn. 303; Noyes *v.* Stillman, 24 Id. 15; Pillsbury *v.* Moore, 44 Me. 154; Beavers *v.* Trimmer, 2 N. J. Law, 97; McDonough *v.* Gilman, 3 Allen, 264; Chitty on Pleadings, 71; 2 Id. 333 note, C.; Cooley on Torts, 611; 1 Hilliard on Torts, 574; Moak's Underhill on Torts, 253, 254, 255; Addison on Torts, sects. 240, 280, 283.

In Ahern *v.* Steele, *ante;* a testator devised a pier in the city of New York, in trust for a daughter, to be managed and controlled during her life by the trustee who leased the same for a term of years. The lease provided that the lessor should not be responsible for any defect in the premises, and that he may enter for the purpose of making repairs, but was not bound to repair. At the execution of the lease the pier was out of repair. The daughter of testator died before the expiration of the lease leaving two daughters and a son, the latter of whom subsequently died. One of the daughters brought an action for partition, and a receiver was appointed with directions to reserve a specified portion of the receipts to be applied to the payment for necessary repairs. Plaintiff's intestate fell through a hole in the pier, which remained out of repair, and was drowned, and plaintiff brought an action against the daughters and the executor of the son to recover damages for negligence. At the time of the accident the said lease was still outstanding. It was held that the defendants, having taken title subject to a valid outstanding lease which contained no covenant binding the landlord to repair, were not responsible for a nuisance of which they had no notice, and which had been

created because of failure to repair during the existence of the precedent estate. The trustee, by demising the pier while it was in such a condition as to be a nuisance, was guilty of a misfeasance, and would, during the existence of his estate, notwithstanding the lease, have been responsible for any damage caused by the nuisance. Id. And if he had been the trustee of the defendants, and they had been the beneficiaries under the trust, they would not have been liable for any nuisance created or permitted by him. Id. People v. Townsend, 3 Hill, 479. They took their title under the will of the testator, and were in no way responsible for what the trustee did, or omitted to do, upon the trust estate. Id.

In Hubbard v. Russell, 24 Barb. 404, it was held that the plaintiff, in an action against the continuer of a private nuisance originally erected by another, to recover damages for the injury sustained thereby, must prove a notice of its existence to the defendant, and a request to remove it.

So, in Conhocton Stone Co. v. B., N. Y. & E. R. R. Co., 51 N. Y. 573, where the question was presented whether a grantee of real estate, on which a nuisance had been erected, before its conveyance to him, by a previous owner, and which was merely continued as it was at the time he acquired title, can, without any previous notice of its existence, and a request to abate it, be held liable for damages subsequently resulting therefrom, during the continuance of his ownership, it was held that it is necessary to show that, before the commencement of the action, he had notice or knowledge of the existence of the nuisance, but that it is not necessary to prove a request to abate.

And in Miller v. Church, 2 N. Y. S. C. 259, in an action for damages for the overflow of a mill-pond it was shown that defendant, who was the owner of the pond, was not in possession, having leased the same to a third party, and it was held that the plaintiff could not recover for such overflow, without showing that defendant had notice or knowledge of the existence of the same before the commencement of the action.

The notice required in such case may be either oral or written, or it may be by acts done, clearly informing the party to be affected by it of the existence of the nuisance, and of the desire of the party injured to have it removed, so that the person to whom it is addressed shall fully understand the ground of complaint, and that the party giving it is unwilling to have it continue. Conhocton Stone Co. v. B., N. Y. & E. R. R. Co., ante; Miller v. Church, ante.

In Swords v. Edgar, 59 N. Y. 28; 44 How. 139, where a pier was leased, and at the time of the demise and delivery of possession to the lessee, it was in a defective and unsafe condition, and in consequence an injury, thereafter and while in the possession of the lessee, happens to one lawfully thereon, it was held that the lessor who was receiving a benefit by way of rent or otherwise, was liable, and that a covenant in the lease, binding the lessee to keep the pier in good order and repair, did not remove or affect the lessor's liability, in this respect, to third persons.

Note on the Liability of Landlords to Tenants and other Persons.

If a landlord lets premises, not in themselves a nuisance, and it is entirely at the option of the tenant to so use them or not as that they shall not become so, and the landlord will receive the same benefit if they are not so used, he is not responsible, if by the careless use of the tenant they become a nuisance. Clancy *v.* Byrne, *ante;* Rich *v.* Basterfield, 56 E. C. L. R. 783.

Where the roof of a building is so constructed as to render the snow falling upon it liable to be precipitated upon the sidewalk below, and has no guard at its edge to prevent such result, it is, in judgment of law, a nuisance, when maintained in a large city. Walsh *v.* Mead, 8 Hun, 387. And the owner is liable for injuries occasioned thereby to persons passing upon the sidewalk, even though the building is at the time in the occupation of a tenant who is bound to make all needful repairs, and whose negligence contributes in producing the result. · Id.

In Hughes *v.* Orange Co., Milk Ass'n, 56 Hun, 396, a lessee of premises in the city of New York as a stable, who has a contract with a party to remove the manure which the latter takes from a pit in the sidewalk, was held to be bound to see that the sidewalk was safe while the hole was open, and to be liable for an injury caused by falling into the pit while it was open for the removal of the manure.

In Mayor of Albany *v.* Cunleff, 2 N. Y. 165, it was stated to be the law that a party who erected a nuisance will be answerable for its continuance, after he has parted with the possession of the land, only where he continues to derive a benefit from the nuisance, as by demising and receiving rent, or where he conveys the property, with covenants for the continuance of the nuisance.

It was held in People *v.* Erwin, 4 Denio, 129, that one who demises a house with the intent that it shall be kept, and which is accordingly kept, for the purposes of public prostitution, and who derives a profit from that mode of using the property, is punishable by indictment for a misdemeanor.

A landlord who lets premises, knowing that they are infected by a contagious disease, without notifying the tenant thereof, is, in case the disease is communicated, liable to the latter for the damages sustained. Cesar *v.* Karutz, 60 N. Y. 229.

In Snyder *v.* Gorden, 46 Hun, 538, the plaintiff rented of defendant a suite of vacant apartments in a tenement house, but before doing so, went to see them and was informed by a tenant of adjoining apartments in the same house that her children had scarlet fever and diphtheria. Plaintiff reported this to defendant who denied it and told him that the tenant wanted the rooms left vacant so that she might have the use of the apartments and that he need have no fear; that the house was perfectly healthy and that there had never been any sickness there. Plaintiff took the rooms and a few weeks later his children had diphtheria and died. The general rule of law was laid down by the court that a landlord who lets

Note on the Liability of Landlords to Tenants and other Persons.

premises, knowing that they are contaminated with infections disease, without notifying the tenant, is liable for damages in case the disease is communicated; and it was further held that it was not the duty of the plaintiff, under the circumstances, to search or inquire who was the doctor of the informing tenant, in order to ascertain from him the nature of the disease with which her children were afflicted. See Span v. Ely, 8 Id. 255.

The lessee, in an action for rent, cannot counterclaim damages for the sickness of himself and family, resulting from the escape of sewer gas because of defective plumbing, if the lessor is not guilty of any wrongful concealment of the facts, as there is no implied covenant as to the plumbing on the part of the lessor. Chadwick v. Woodward, 12 Daly, 399; 13 Abb. N. C. 441. And in McDonald v. Flamme, Id. 456, it was held that a person hiring with notice that the Croton water did not flow in the upper story of the demised premises, cannot maintain an action against the landlord for fraudulently representing the plumbing and other appurtenances to be in perfect order, whereby the lessee was induced to hire the premises for a boarding house, unless he proves that the noxious odors arose from the defective plumbing and not from the lack of water in the upper story. But in Rhinelander v. Seaman, Id. 455, it was held that the landlord's fraudulent concealment of the fact that the premises had been used as a house of prostitution, was a defense to the tenant when sued for rent, in case he was deceived thereby to his damage.

*Excavation.*—An unauthorized excavation in a street of a city for the benefit of adjoining premises, or an excavation by license of competent authority in an improper or unsafe manner or condition, is a nuisance, and all persons, who create, continue or in any way become responsible for it, are liable to any person who is injured thereby, irrespective of any question of negligence. Irvine v. Wood, 51 N. Y. 224. Accordingly, it was held in this case that, where a coal-hole had been excavated in the sidewalk, and not properly covered, and in this condition was used by the lessee of the premises to which it was appurtenant, and in consequence of the defective covering a person passing by fell through and was injured, the lessee was liable either separately or jointly with the lessor for the resulting injuries, and notice of this defect, as it could be discovered by proper examination, is not necessary in order to fix this liability. As the lessor rented the nuisance and took rent for it, and the tenant used it and paid rent, they must both be considered as continuing and responsible for the nuisance. Id.

Where the owner of a building builds a coal vault under or adjoining the sidewalk with an opening to the surface by the permission of the municipality, and constructs it in all respects safely and properly, and then rents the premises to a tenant who takes the entire possession and occupation, and in his use of the property carelessly leaves the coal-hole open, whereby some one is injured, the tenant and not the landlord, is liable, on the ground that the latter has neither created nor maintained a nuisance, nor

been guilty of any negligence or wrong. *Jennings* v. *Van Schaick*, 20 Abb. N. C. 324. But where the building is leased in flats or apartments, and the owner remains in control of the sidewalk, etc., and hires a janitor whose duty it is to open the coal-hole when coal is to be delivered to the tenants, and the janitor negligently omits to guard the hole during the delivery, the lessor is liable for any resulting injury to a passer-by. Id.

In Anderson v. Dickie, 26 How. 105, it was held that an owner of property in a city, who makes a coal vault under the sidewalk, opposite his premises for his own convenience, is not relieved from liability for injuries received by a person, who, in passing over it with ordinary care falls through an insecure circular grating into such vault, though he has demised the premises to a tenant who had been for several years, and was then, in possession. The decision was put upon the ground that the coal vault in such condition was a nuisance. In Woram v. Noble, 41 Hun, 398, the defendant became the owner of the premises subject to a lease which required the tenant to make all repairs, and was in force at the time of the accident. The coal-hole was then in the sidewalk, but had not been constructed by the defendant, nor did he have any notice or knowledge of its defective condition. It was held that the defendant, in the absence of any evidence to show that he was responsible for its construction, or had knowledge of its defective condition, could not be held liable for any injuries sustained in consequence thereof, though the coal-hole, without permit for its construction, became and was, a nuisance at the time of the injury.

In Wolf v. Kilpatrick, 101 N. Y. 146, an owner of premises in the city of New York leased them to a tenant, who in accordance, with a permit from the City, built a vault under the sidewalk in front of the premises, with a coal-hole, which was properly constructed and in the usual and permitted manner, through the wrongful act of a stranger who broke the stone supporting the iron cover of the coal hole, the cover turned when plaintiff stepped upon it, and he fell and was injured. The owner had no knowledge or notice of this defect. In an action against him by the injured party, it was held that he was not liable, and would not have been liable, it seems, had he himself constructed the vault lawfully and with due prudence and care, and subsequently demised the premises without covenant on his part to repair; that, if the coal-hole became a nuisance after the stone was broken, only the person who created the nuisance, or he who suffered it to continue, was responsible; and that a party out of possession and control and who had no knowledge, actual or constructive, of the defect could not be said to have suffered it to continue.

*Apartment houses.*—Where an owner of premises leases them, not as an entirety to one individual, but in separate apartments to different tenants, and reserves the hallways, stairways, platforms, exits and entrances for the common use of all the tenants, the latter have only an easement over the same, and the duty rests on the landlord to maintain them in repair.

Note on the Liability of Landlords to Tenants and other Persons.

Dowd v. Fitzpatrick, 18 W. Dig, 343. The case is not controlled by the general principle that the landlord is not bound to repair except by special contract. *Id.*

The owner of a building, who has leased the rooms therein to different tenants but reserved the hall and stairway for common use and has put down upon the stairs in such common hall an oil-cloth, is under obligation to take care that such oil-cloth does not become dangerous. by reason of any negligence on his part, to persons having the right to use it in passing to and from the rooms of his tenants. Henkel v. Murr, 31 Hun, 28. But to charge him as owner, it is necessary to show that he has neglected, after having knowledge or notice of its dangerous condition, to repair the oil-cloth with promptitude, or that he had omitted to use such reasonable means and precautions for ascertaining its condition and making requisite repairs, as his relation to it, and his duty to the tenants, and other persons lawfully using it, demanded at his hands. Id.

In Victory v. Foran, 56 N. Y. Super, 507, an action was brought to recover for injuries received by falling down a stairway, in a leased house. The tenant, while descending the stairway, caught her dress on a nail protruding from one of the steps, and was thrown to the bottom. The landlord's agent had notice of the condition of the stairway. It was held that the evidence would warrant the jury in finding that the tenant was injured, without negligence on her part, through the negligence of the landlord.

In Perking v. Eighmie, 53 Hun, 634, the plaintiff rented rooms on the second floor of defendant's building; the remainder of which was used by defendant as a factory and in the cellar of which was a boiler to furnish power and heat. This boiler had been in use for a considerable time, and no defect or imperfection was discovered in it until a small leak was found, whereupon the steam was run down and a skilful mechanic employed to repair it While in his charge, from some unforeseen cause, the boiler exploded, and set fire to the building and plaintiff's goods were destroyed. It was held that the defendant was not liable for the negligence of the mechanic, if any, as the relation of master and servant did not exist between them, nor could he be charged with personal negligence.

The hallway in a tenant house occupied by several families, with one mode of access, is not rented to any tenant as a part of the demised premises except in common with the other tenants, and it is necessarily used by all as a means of communication. Dollard v. Roberts, 55 Hun, 607. In this case, the ceiling of a common hallway of a tenement, owned by defendant, was in a dangerous condition, of which he had notice. The daughter of a tenant was injured by the fall of plaster therefrom, and it was held that the defendant was liable. The fact that the tenant and his daughter knew of the defect did not necessarily impose upon either of them the obligation of becoming a prisoner in his apartments,

or, having successfully gone out, to remain absent, until the landlord should make the necessary repairs to the ceiling to remove the danger; nor did it impose upon either the obligation, when walking through the hallway, of being constantly on the alert to protect the defendant from the consequences of his own misconduct. Id. The landlord has no right, moral or legal, to put his tenants, or keep them, in jeopardy after he has been advised of such a condition of the hall way as justified the apprehension of danger, and it is his duty, just as soon as he is informed of such defect, to remove it. Id.

In Stergen *v.* Van Sicklen, 55 Hun, 605, the landlord engaged the tenant to repair a defect in the stairs in the demised premises and remitted a certain amount from the rent to compensate him for doing the work, and it was held that no action would lie against the landlord by the tenant or those claiming under him for injuries thereafter caused by that defect. A visitor to the family of the tenant, is included among those claiming under the tenant and can not recover in an action against the landlord for injuries sustained while on such visit.

In Bold *v.* O'Brien, 17 W. Dig. 466, the court held that a tenant from year to year renting part of a dwelling house, which is also occupied by other tenants, in the absence of an express agreement, is under no obligation to make repairs of a general, substantial and lasting nature; and that the landlord, so far as the tenant is concerned, when the latter occupies but a small portion of the tenement, is bound to keep the parts of the tenement under his control in such a state of repair that the tenant may occupy his premises with safety.

In Jucht *v.* Behrens, City·Ct., Brooklin, October 28, 1889, an action was brought to recover damages for injuries sustained in falling down the cellar stairs of a tenement house which was occupied by six families. There was no peculiar construction in the hall or stairway, and one of the tenants had agreed, at the owner's request, to keep the hall lighted. The plaintiff went in the apartment of said tenant, to deliver her washing, and as she was leaving, went out into the hall which was unlighted, and passing through the open cellar door, fell down the cellar stairs and suffered injury. It was held that, in the absence of proof that the owner or her servants left the door open, the plaintiff cannot recover.

In Alperin *v.* Earle, 55 Hun, 211, the defendant was the owner of a tenement house, and the plaintiff was the wife of one of his tenants. While engaged in hanging clothes upon a line stretched across the roof of the house she was standing upon some wooden slats which had been placed over the tin roof for the accommodation of the tenants in drying their clothes. One of these slats broke under her weight, and her foot went through and was injured. It was held that the landlord is responsible for injuries to his tenants resulting from the dangerous conditions of those parts of the building which he reserves for the common use and over

which he retains control, only when he has been guilty of actual negligence with regard thereto. To bring him within this rule, it must appear that, with some notice of the condition of things or under some circumstances equivalent to notice, such as unreasonable omission to ascertain the condition, he has failed to make the necessary repairs or changes called for by the condition or exigency. Id. The rule that the landlord is only responsible for some willful act, or for fraud, or for creating a nuisance, is too narrow, and is only applicable to a demise of the entire building as in Jaffe v. Harteau, 56 N. Y. 398, and Edwards v. N. Y. & H. R. R. Co., 98 Id. 245. Id.

The rule as to the non-liability of the lessor, stated in Jaffe v. Harteau, ante, and Edwards v. N. Y. & H. R. R. Co., ante, is not applicable to a case where the building is let to several tenants, and the staircase is the common passage way to the street for all the tenants and all persons lawfully entering the building, and the passages and stairs are not demised to any tenant, but remain in the possession and the control of the lessor, to be kept in condition for the common use of all. O'Sullivan v. Norwood, N. Y. Com. Pl., June 27, 1887. The lessor, in such case, owes to all persons lawfully using the staircase the duty of keeping it in repair and reasonably safe for travel. And if ordinary care requires that the stairs, or any portion thereof, shall be kept lighted in order to render them reasonably safe for travel, it is the lessor's duty to light them. Id. The fact that the person injured was upon the premises as a visitor, not of a tenant, but of a sub-tenant of a portion of the building, does not affect his right to recover for the negligence of the lessor. Id. ; Jaffe v. Harteau, ante ; Coughtry v. Globe Woolen Co., 56 N. Y. 124.

In Donnelly v. Jenkins, 58 How., 252, there was an elevator in the hallway of premises used by different tenants in common, which was inclosed and had doors opening into the hallway on the first floor, upon which doors there were bolts for the purpose of fastening them. A person, lawfully on the premises delivering goods to one of the tenants of the upper floors, mistook the elevator for the stairs and walked into it, and received injuries resulting in death. It was held that the tenants on one floor were not liable for the negligent manner of use of the hatchway by the tenants on one of the other floors, and, in the absence of any affirmative proof of specific acts of negligence on the part of any particular tenant, neither of the tenants was liable, either severally or jointly, for injuries resulting from such accident.

In Brennan v. Lachat, N. Y. Com. Pl., February 7, 1886, where the complaint, in an action by a tenant against a landlord, alleged that the defendant was the owner of a tenement house occupied by plaintiff and other tenants, and that the stairs were covered with zinc or some other metal which had become so worn that the edges became sharp, jagged, and curled up, and that defendant negligently permitted them to remain so; and that plaintiff, while lawfully using the stairs and carefully passing down the same, and

Note on the Liability of Landlords to Tenants and other Persons.

without any negligence on her part, tripped, fell, and broke her right hand and wrist, it was held that it stated a good cause of action under section 652 of the consolidation act requiring, in respect to all tenement houses, that the stairs shall be kept in good repair. The duty thus imposed upon the landlord is for the benefit of the tenants, so that they may have a safe passage from their apartments to the street, and a breach of the duty imposed by statute gives a right of action. Id. ; Willy *v.* Mulledy, 78 N. Y. 311.

In Stapenhorst *v.* American Mfg. Co., 15 Abb. N. S. 355, it was held that an action would lie by a tenant of a part of a building against his landlord who occupied another portion to recover damages for negligence in allowing injurious substances to leak through from his part unto plaintiff's rooms; and that the theory that, as between landlord and tenant, the landlord is not bound to repair without express covenant, does not apply in case negligence is shown.