JAMES J. FORD *vs.* ALLAN LINE STEAMSHIP COMPANY, LIMITED.
MICHAEL J. BUCKLEY *vs.* SAME.
PATRICK CAMPBELL *vs.* SAME.

Suffolk.   March 13, 1917. — May 25, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Negligence,* Defective hatch cover, Of fellow servant.   *Longshoreman.*

Where a longshoreman is employed by a stevedore to unload a vessel that has
arrived at the dock of its owner, he is not as matter of law negligent in stepping
on a hatch cover that is covered with tarpaulin before investigating what is
under the tarpaulin to ascertain whether the hatch cover is defective or in-
sufficiently secured.

If the longshoreman in stepping on the tarpaulin obeys an order of the foreman
of the stevedore, which such foreman is negligent in giving, and the longshore-
man falls through the hatch cover, which is defective or inadequate, and is
injured, in an action brought by him against the owner of the vessel for his
injuries thus sustained the negligence of his fellow servant in the employ of the
stevedore is no defence to the shipowner who did not employ either of them.

In the action mentioned above there was evidence warranting findings that the
framework for the support of the hatch cover was deficient, defective or in-
adequate, that the cover itself was worn, chafed and over-sized and that these
conditions were concealed so as not to be obvious to the plaintiff, and it was
*held* that the defendant could be found to be liable to the plaintiff for its negli-
gence in failing to ascertain the condition of the hatchway and of its covers
before inviting and inducing the plaintiff to do work that was dangerous by
reason of such defects.

THREE ACTIONS OF TORT, each by a longshoreman, for injuries
sustained on December 17, 1913, by falling through a defective
hatch cover on a vessel of the defendant when engaged in the
employ of a stevedore in unloading the vessel lying in the defend-
ant's dock.   Writs dated June 1, 1914.

In the Superior Court the cases were tried together before
*Hall,* J.   The evidence is described in the opinion, where also are
stated the defendant's requests for rulings which were denied by
the judge.   The jury returned a verdict for the plaintiff in each of
the cases, in the case of Ford in the sum of $2,500, in the case of
Buckley in the sum of $1,100 and in the case of Campbell in the
sum of $2,170.84.   The defendant alleged exceptions.

The cases were submitted on briefs.

*G. P. Wardner,* for the defendant.

*J. C. Woodman & P. J. Madigan,* for the plaintiffs.

PIERCE, J.   These are three actions of tort, to recover damages for personal injuries sustained by the plaintiffs in consequence of falling through a hatchway on the defendant's steamer, while said steamer was lying at the defendant's wharf in the city of Boston. The plaintiffs were longshoremen employed by a stevedore to unload the steamer.   The stevedore had a contract in writing with the defendant in accordance with which he was unloading the vessel.

On the day of the accident the plaintiffs had gone on board the vessel, which had just docked, and by direction of the stevedore's foreman had taken off the hatches from the top deck; then, one after the other, in obedience to an order to remove the hatches of the main deck, the plaintiffs went down over the coamings to the main deck.   The hatchway between the main deck and the top deck was enclosed by partitions extending from the main deck to the top deck.   There was a companionway from the top deck to the main deck and a door in the partition.   There is in some ships a companionway or stairway from the upper deck to the next deck, but the plaintiffs testified and the jury could find that they did not know of the existence of a companionway or door in the partition of this ship.   The hatchway on the main deck was enclosed by iron coamings which were from about one and one half to two feet high and distant from the partition about six inches; there was a hand rail round one end of the hatchway about three inches from the side and three feet from the bottom.   After going over the coamings the plaintiffs put their feet on the hand rail and then stepped from there down to the coamings of the hatch of the main deck; from the coamings they stepped on a tarpaulin on the hatches.   As the last of the three stepped onto the tarpaulin, the forward off shore hatch cover gave way and precipitated them to the deck, about eight feet below.

The hatchway was about eighteen feet square.   It was enclosed by iron frames called coamings.   Two iron beams, called torture pieces, crossed the hatch and fitted into sockets in the coamings. These beams divided the hatch into three sections.   Iron beams, called fore-and-afts, extended from the centre of the torture pieces

to the coamings and in the middle between the torture pieces; side fore-and-afts also extended between the torture pieces and the coamings. There were flanges one and one half inches to two inches in width and about the same height on the coamings and on the fore-and-afts. The hatch covers that fitted into these sections were about eight feet long and fourteen to eighteen inches wide and three inches thick; each "hatch [cover] goes against the flange of the coamings so it cannot move that way, and it goes against the flange of the fore-and-after so that it will not move that way." The aft section of the hatch covers, that is, the whole space between the after side of the hatch and the first torture piece, was open clear through to the hold of the ship before the men started to work. The tarpaulin that had covered the open spaces was rolled back over the remaining hatch covers. It weighed three or four hundred pounds and it was impossible to see the covers without removing the tarpaulin.

There was abundant evidence to warrant a finding that the hatch that fell, the forward off shore hatch, was "pretty well worn, very much worn" on the corners; that "on the bottom of the edge of the hatch was a groove chafed from being worn either on the fore-and-aft or on the coamings;" that "on one side of the hatch it was all worn away . . . from resting on the fore-and-aft piece or from resting on the coamings." There was also evidence to warrant a finding that the hatch "lay over or projected the fore-and-aft about an inch and a half to two inches" and that either the side fore-and-aft which supported the hatch fell with the hatch or else there was no side fore-and-aft under the hatch at the time the men stepped on it. There was also evidence to warrant a finding that the only safe and practical way to remove the tarpaulin was to stand on the tarpaulin and to roll it back from aft to forward, that is from that portion of the hatch which was open. There was evidence that the vessel ran between Glasgow and Boston, sometimes stopping at an intermediate port, and that the vessels of the defendant were usually loaded and discharged by an independent contractor or stevedore.

At the close of the evidence the defendant requested rulings in substance that there was no evidence upon which the jury was warranted in finding due care on the part of the plaintiffs, and that there was no evidence upon which the jury was warranted in

finding negligence on the part of the defendant. These requests were denied, the issues were submitted to the jury with full instructions, and the case is before this court after verdicts for the plaintiffs.

The contention of the defendant that the risk was obvious because the plaintiffs saw that the aft section of the hatches was removed and the tarpaulin rolled back upon the remaining sections, could not have been ruled as a conclusion of law. Each section, when its hatch cover was properly fitted to and placed upon the flanges of the coamings and fore-and-afts, was independent of every other section, and so far as any evidence discloses, the absence of the cover of one section would not require an absolute inference of a like condition in any other section. Nor were the plaintiffs required in the exercise of due care, as matter of law, to investigate the state of affairs under the tarpaulin before stepping upon it. The jury properly could find as a fact that the plaintiffs reasonably could assume that side fore-and-afts were in the position usually occupied by side fore-and-afts, that they were intact and were adequate to support the hatch covers as they were designed to do.

The defendant contends that there can be no recovery because the foreman of the stevedore was negligent in directing or permitting the plaintiffs to step on the tarpaulin. The answer to this argument is that the doctrine of the assumption of risk of injury resulting from the negligence of a fellow servant can be invoked as a defence only when the action is against a common master. *Morgan* v. *Smith*, 159 Mass. 570. *Reagan* v. *Casey*, 160 Mass. 374.

The defendant next contends that "if the hatch covers were placed in position, either at the loading port or at an intermediate port, in the process of loading or discharging by independent stevedores in charge of the operation and they failed properly to adjust the hatch covers or the fore-and-afts, or the side pieces, or used the wrong section of hatch cover, or in any way left a hatch cover in an insecure position and then covered it up with a tarpaulin, the stevedores and not the shipowners would be responsible for any resulting negligence." This position would be sound if the defendant had proved that it had employed a competent stevedore to do work that necessitated the removal and restoration of the structural framework to support the hatch covers, if it also was

shown that the framework was adequate, that the covers were not defective and that the accident happened during the work of the stevedore; but, if the hatchways or covers were not obviously unsafe, it would be unsound as an excuse for a neglect to ascertain the condition of the hatchway and its covers before inviting and inducing the plaintiffs to do work that was dangerous to do upon or about them. *Mulchey* v. *Methodist Religious Society*, 125 Mass. 487.

The evidence was abundant to warrant a finding that the framework for the support of the hatch covers was deficient, defective or inadequate; that the cover itself was worn, chafed, and over-sized; and that these conditions were not obvious to the plaintiffs. *Crimmins* v. *Booth*, 202 Mass. 17.

*Exceptions overruled.*