ALFRED GRAY *vs.* BOSTON, REVERE BEACH AND LYNN RAILROAD COMPANY.

Suffolk.    November 15, 1927.— January 3, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Negligence,* Toward employee of independent contractor.

Apart from a special contract exempting it from such duty, a railroad corporation, owning a staging which it furnishes to an independent contractor engaged with his employees in unloading coal for the railroad corporation from a barge, owes to an employee of the independent contractor the duty of exercising reasonable care to discover and remedy a defective condition in the staging which is not open and obvious to the employee.

At the trial of an action of tort against a railroad corporation for personal injuries due to the breaking of a rail of a staging the plaintiff was using as the employee of an independent contractor with the defendant while unloading coal from a barge for the defendant, it appeared that the staging was furnished by the defendant for the plaintiff's employer, that it was a part of a wharf of the defendant and that, when not in use, it was hoisted to an upright position and made fast; and upon the evidence it was *held*, that

(1) The question, whether the defect in the railing was an obvious one of which the plaintiff assumed the risk, or was a concealed danger

of which the defendant had notice or which in the exercise of reasonable care it should have discovered and remedied, was for the jury;

(2) The plaintiff was not, as matter of law, bound to look for hidden defects;

(3) The question, whether the defendant, as owner, continued to be in control of the staging and furnished it from time to time to the contractor as barges were to be unloaded, or whether complete control of it had passed to the plaintiff's employer, was for the jury;

(4) The trial judge could not properly have ruled that the only duty of the defendant was to repair on notice; the question, whether the defendant, as owner, had a duty to inspect and repair without notice, was for the jury;

(5) If the defendant had the duty of inspecting the staging, it could not be excused from the performance of that duty by showing that, when the staging was hoisted, inspection was difficult.

TORT for personal injuries. Writ dated July 9, 1924.

In the Superior Court, the action was tried before *Greenhalge*, J. Material evidence is stated in the opinion. There was a verdict for the plaintiff in the sum of $3,983. The defendant alleged exceptions.

*T. Kelly*, for the defendant, submitted a brief.

*E. M. Shanley*, for the plaintiff.

SANDERSON, J. In this action the plaintiff seeks to recover for injuries sustained by falling from a staging while he was in the employ of one John Donahue who, under contract with the defendant, was unloading coal from a barge at its wharf to its coal pocket, in East Boston. At the close of the evidence the trial judge denied the defendant's motion for a directed verdict, the jury found for the plaintiff, and the case is before us on the defendant's exceptions.

The jury were warranted in finding that, on the day of the accident, the plaintiff's work required him to stand upon the movable outrigger of a staging used for unloading coal. This staging was built by the defendant in 1922 for that purpose, and is a permanent part of the wharf, being made fast to it by chains. As the coal buckets were raised and lowered, the plaintiff's work was to guide them so they would clear the staging, and in doing this it was his practice to rest against the rail of the outrigger to avoid losing his balance and falling into the hold of the vessel. While performing this work on the day in question, he leaned against the front

rail, which broke causing him to fall and sustain the injuries for which the action is brought.

Donahue had an oral contract with the defendant to unload a cargo of coal from the barge at the wharf. He had done similar work for it for several years under an oral contract, unloading ten or fifteen barges a year. The defendant furnished the staging of which the outrigger was a part, and was to make repairs upon it. There was evidence that the defendant's employees made repairs from time to time, and also that repairs were made by employees of Donahue, but that as a rule they were made by the defendant; and that the defendant's superintendent had been seen examining the staging. Donahue furnished the engine and certain other apparatus used in unloading boats; his engine was used to lower the staging into a horizontal position when there was coal to unload, and, after the cargo was unloaded, to hoist the staging into an upright position where it was made fast and left until the next cargo should come. The plaintiff had been working at the same place four or five days, unloading the same barge, and had worked on the same staging on other occasions. He saw nothing wrong with it, although he made no special examination of it. He testified that at no time during the four or five days before the accident did he allow any of the buckets to strike the rail; that he had nothing to do with the staging except to lower it or hoist it at times during the period of his employment.

There was evidence that when the plaintiff fell the front rail of the outrigger came down into the hold with him; that the places where it was attached to the stage were "dirty and rotten," the nails were of different kinds and had pulled out — some were rusty and broken off — the boards, when examined after the accident, "were rotten," broken off and discolored, and the sides of the staging were "decayed and rotten." One witness testified that the condition could be seen easily after the accident but not before. An employee of Donahue, called by the plaintiff, testified that he worked on this same staging a week or two before the accident when the front piece of the outrigger came out, and the nails were rusty and "nail holes rotten," and it was then repaired by

some one who was not one of Donahue's employees. There was evidence that the contractor sent for the defendant's employees when he wanted them to make repairs, but that "Whenever it would break and there wouldn't be anybody round belonging to the company, . . . [Donahue's] men would do it themselves"; and if there were real repairs he reported to the defendant. A carpenter employed by the defendant testified that he arrived at the scene of the accident just as Donahue's men were taking the rail up from the barge; that he took charge of the rail which he exhibited in court; that he could not examine the staging because it was "standing up perpendicular in the air"; that it "was never down that he knew of except when Mr. Donahue's men lowered it"; that he had been up on the staging a half dozen times when they were unloading coal and the staging was down, just to see how the coal was getting on and how near they were to being through; that he repaired the staging when the rail broke and the plaintiff fell, by putting another end into it, on the day of the accident. The defendant's superintendent testified that he knew the rail on the outrigger was there as a guard to prevent the stageman from falling into the hold of the vessel when unloading it, and that he made no examination of the staging either before or after the plaintiff was hurt; that he received no complaints from Donahue or his men, that the staging was unsafe or out of repair, just previous to or within three months before the accident.

The defendant contends that the staging was handed over to the contractor when built, and that the defendant thereafter had no duty to repair except on notice. The owner of a staging who furnishes it for the use of an independent contractor ordinarily owes the same duty to an employee of the contractor that the owner would owe to his own employee using the same staging. The employee in either case would assume all obvious risks in its use. *Sullivan* v. *New Bedford Gas & Edison Light Co.* 190 Mass. 288, 292. *Crimmins* v. *Booth*, 202 Mass. 17. *Condon* v. *Gahm*, 208 Mass. 339, 340. *Cross* v. *Boston & Maine Railroad*, 223 Mass. 144, 147. Apart from special contract, such owner would owe an employee

the duty of exercising reasonable care to discover and remedy a defective condition in the premises which was not open and obvious to such employee. The question whether, upon the evidence relating to the railing and to the parts of the staging to which it was attached, the defective condition that caused it to give way was an obvious one of which the plaintiff assumed the risk, or was a concealed danger of which the defendant had notice or which in the exercise of reasonable care it should have discovered and remedied, was for the jury. The plaintiff was not, as matter of law, bound to look for hidden defects. *Ford* v. *Allan Line Steamship Co. Ltd.* 227 Mass. 109, 112. It was for the jury to say whether the defendant, as owner, continued to be in control of the staging and furnished it from time to time to the contractor as barges were to be unloaded, or whether complete control of it had passed to the contractor. See *Cunningham* v. *Cambridge Savings Bank*, 138 Mass. 480, 481; *Perkins* v. *Rice*, 187 Mass. 28, 30; *Grasselli Dyestuff Corp*. v. *John Campbell & Co*. 259 Mass. 103, 109. The judge could not have ruled that the only duty of the defendant was to repair on notice. The question, whether the defendant, as owner, had a duty to inspect and repair without notice, was for the jury. If the defendant had the duty of inspecting the staging, it could not be excused from the performance of that duty by showing that when the staging is hoisted up inspection is difficult. The jury could have found that the plaintiff's injury was caused by negligence of the defendant in failing to perform a duty which it owed him. *Sweeny* v. *Old Colony & Newport Railroad*, 10 Allen, 368, 372.

Exceptions to the judge's charge have not been argued and are treated as waived. The defendant's motion for a directed verdict was rightly denied.

*Exceptions overruled.*