Hillsborough,
April 3, 1928.

NESTOR MARTEL *v.* FRED A. WALLACE & a.

*Doyle & Doyle (Mr. Paul J. Doyle orally),* for the plaintiff.

*Charles D. Barnard* and *Warren, Howe & Wilson (Mr. Howe* orally), for the defendants.

ALLEN, J.   The hole in the floor was near a corner of a newly built room and had been left for the installation of an elevator from the floor below.   With the room bare and well lighted as it was when the plaintiff was there, warning of the hole in an uncovered condition might be held unnecessary.   But when the plaintiff went to the room to do his work, one of the defendants' employees had just covered the hole with some pans ordinarily used to catch the drippings of oil underneath automobiles while in a garage.   They were placed over the hole to keep the dust and dirt from dropping through it to the room below while the employee swept the floor.

The plaintiff had no warning of the hole or that it was unsafe, as it was, to step on the pans covering it.   It is not a matter of common knowledge from their description as oil pans that they had such shape and appearance as to amount to notice to keep away from them.   They looked like old tin sheeting, and the floor was covered with litter and dirt of various kinds of building refuse.   Under such appearance one without actual notice might well think the pans were a part of the refuse rather than a cover for a hole.   Thus covered, the hole was a concealed danger.   It follows that it is not conclusive either that the plaintiff was negligent or that he assumed

the risk. And he was entitled to warning if ordinary care would have given it to him; and if the course of his work in the room would so probably take him where the hole was that one in the place of the owner of the premises would have warned him of it, he was thus entitled.

As to this, the record is somewhat indefinite and a plan used at the trial has not been made a part of the transferred case. But it appears that the hole was near a corner of two walls in each of which were two windows to be painted by the plaintiff. In doing the work he took the windows out of their frames and the work meant some moving about in the room which might be found fairly within reach of the hole. It may therefore be found that he was entitled to warning for the work he was to do.

But it is contended that when he fell through the hole, instead of doing his work he was engaged in conduct outside of it not required to be anticipated, and that as to a fall thus received he was not entitled to warning. From his own standpoint he was doing his work at the time. He had been directed by his employer's foreman to paint all the new work in the room. And it was in looking up at an opening in the roof over the hole to see if there was any painting to be done there that he stepped on the pans and fell. From the defendants' standpoint it would be a reasonable finding that Daniels was engaged by them to paint the new work without stated limitation to the windows and a door. The only testimony directly relating to the engagement was given by one of the defendants and is as follows: "Q. . . . what . . . did you tell Mr. Daniels that you wanted done? A. I wanted all of the new work painted. Q. And the new work . . . was . . . what? . . . A. That would be the six windows and the door." This testimony justifies the inference that even if this defendant had it in mind that only the windows and door were to be painted, yet the engagement was broadly to paint the new work. It is true that the engagement was made at the premises where Daniels went to be shown and view the project, but this circumstance does not conclusively rebut an engagement limited to anything more than the new work without specifying it. Under an engagement to do the new work without its stated limitation to the windows and door it would be reasonable to expect that the order for the work as thus given would be passed along to the workman who as an incident of his work and in the absence of more definite instructions might look around to see what the work to be done was. It is therefore reasonable to

infer that the plaintiff was not only in the course of his employment and doing what he was engaged to do when he fell but also was acting within the scope of the work which the defendants engaged Daniels to have done. It thus becomes unnecessary to consider whether, if the plaintiff was not doing his work at the time, he was yet acting in the course of his employment in a way the defendants might be found at fault for not anticipating, as in *Barber* v. *Company*, 79 N. H. 311.

The argument that the fellow-servant rule should be invoked to bar the plaintiff does not invite extended consideration. Common employment between the plaintiff and the defendants' employee who covered the hole was lacking. The plaintiff was in no sense a servant of the defendants. *Standard Oil Co.* v. *Anderson*, 212 U. S. 215; *Hoadley* v. *Company*, 72 Vt. 79; *Driscoll* v. *Company* (R. I.), 69 Atl. Rep. 766; *Delory* v. *Blodgett*, 185 Mass. 126; *Ford* v. *Company*, 227 Mass. 109; *Duart* v. *Simmons*, 231 Mass. 313; *Kane* v. *Company*, 153 N. Y. 680; *Norman* v. *Company*, 71 N. J. Law 652; *Coates* v. *Chapman*, 195 Pa. St. 109; *Kelly* v. *Tyra*, 103 Minn. 176.

As it thus appears that warning of the danger might be found required in due care to make the plaintiff's work safe and that he might be found to be doing his work when injured, the case was for the jury.

The plaintiff was paid money on account of his injury by his employer Daniels under a written agreement which provided that in consideration of the plaintiff's covenant not to sue him, Daniels should pay an amount equal to compensation under the compensation act. The agreement also provided that if the plaintiff recovered in his action against the defendants, Daniels should be reimbursed for his payment out of any judgment collected in the action.

The agreement was properly held not to be in full satisfaction for the injury. Not only did it contain a covenant not to sue as indicating that the settlement was not intended as such satisfaction (*Carpenter* v. *Company*, 78 N. H. 118; *Masterson* v. *Railway*, *ante*, 190), but the payment was arbitrarily fixed at an amount substantially less than would represent the plaintiff's actual damages for which recovery would be given in an action at law. No allowance for the element of pain and suffering was included, and the compensation provided by the compensation act is by its terms expressly limited to partial rather than full allowance for incapacity.

The law as to the relative rights of an employer who is under

liability to his employee by reason of the compensation act and a wrongdoer who injures the employee while engaged in his employment, as to payment by one releasing wholly or in part the other, is declared in *Stacy* v. *Company, post*, 281. But Daniels was under no such liability here. So far as appears, the plaintiff was not engaged in any of the employments described in the act, and any liability of Daniels was at common law and not statutory. The payment by Daniels of an amount equal to an award under the act did not establish a statutory relationship entitling the plaintiff to compensation under the act, but the plaintiff's right to such amount came solely from the settlement agreement. The amount was determined not by force of the act but by force of the agreement.

But it does not follow that the usual rule of application when satisfaction is only partial is to be enforced, as in *Masterson* v. *Railway, supra*. Daniels' payment under the terms of the settlement between him and the plaintiff was conditional, and not absolute or finally definite, and the question arises how far the payment was a partial satisfaction. Assuming the validity of the terms, he is now entitled to repayment, and by such repayment the plaintiff's partial satisfaction will be avoided and come to nothing. The verdict fixes the amount of the damages and obviously the plaintiff should receive and retain such amount. A result which leaves him less would leave his injury partly uncompensated. Such a result would not be due to his own fault. If the agreement for reimbursement is valid, he rightfully made it and did nothing to jeopardize or discharge his right to full satisfaction. If it is invalid, the invalidity will either bar Daniels from any relief or will result in the full avoidance of the settlement so as to entitle Daniels to repayment and to leave the plaintiff wholly unsatisfied under it.

In this situation the question is primarily not between the parties here but between the defendants and Daniels. While the defendants were not parties to the settlement agreement, yet the agreement affected their rights and obligations. Whether or not it gave partial satisfaction affects their liability to pay only a part or all of the verdict against them. According as Daniels is or is not entitled to reimbursement the verdict should not or should be reduced. And if he is not entitled to reimbursement under the agreement, there is the further question of the defendant's liability to make good to him for his own liability to the plaintiff.

Daniels is not a party to the action, but since his rights are involved, he should be. The plaintiff, in a position analogous to that

of a stakeholder, should seek in the superior court to have him made a party. When this is done, the question of the reduction of the verdict may be passed upon. Further consideration of it here will not be given unless, following the intervention, it is duly transferred.

*Defendants' exceptions overruled: order reducing verdict set aside.*

All concurred.