LINWOOD L. BARRETT *vs.* BUILDERS' PATENT SCAFFOLDING
COMPANY, INC.

Essex.    October 9, 10, 1941. — February 25, 1942.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Negligence,* Employee of independent contractor, Scaffolding, Assumption
of risk, Contributory.    *Proximate Cause.*

Evidence that a contract with a painter required the defendant to furnish
him a suitable scaffolding on which unfastened planks were laid, and
that one of the planks was not safe for use because warped and not
shimmed to prevent tipping, warranted a finding of negligence of the
defendant causing injuries sustained by one of the painter's employees
to whom such defect in the plank was not obvious and who fell off
the scaffolding when the plank, which was in the same position on the
scaffolding as that in which it had been left by the defendant several
days before, tipped while the employee was standing on it at work
and threw him off balance.

Testimony by an experienced painter that when commencing work on
a scaffolding he noticed that some of the planks laid thereon were
warped, and that on the second day of work he noticed that a plank
on which he worked for about twenty minutes was warped but that
he could not look under it and could not see whether it was shimmed
to prevent tipping, did not require a ruling that he assumed the risk
of injury from being thrown off the scaffolding through tipping of that
plank or that he was guilty of negligence contributing to such injury.

TORT.    Writ in the Superior Court dated January 11,
1938.

The action was tried before *Sheehan, J.*   Among requests
of the defendant for rulings were the following: "25. Moving
of planks by employees of the Stern Painting and Decorat-
ing Company is some evidence that the defendant had
surrendered control of the planks to the Stern Painting and
Decorating Company and was no longer in control itself.
26. Moving of planks by the employees of the Stern Paint-
ing and Decorating Company after the scaffold was erected
and planks had been placed in position by the defendant
amounts as a matter of law to assumption of control over
such scaffolding by the Stern Painting and Decorating

Company.  After such assumption of control the defendant's liability thereafter is only for hidden defects."  Instructions applicable to these requests are described in the opinion.

*B. Sanderson,* (*A. R. Kingston & G. Bolton* with him,) for the defendant.

*R. J. Coffin,* (*F. B. Willis* with him,) for the plaintiff.

Cox, J.  This is an action of tort to recover damages for personal injuries sustained by the plaintiff, as the result of a fall from a scaffolding on Monday, August 9, 1937, when he was in the employ of a painting concern for whom the scaffolding had been erected by the defendant under the terms of a written contract.  There was a verdict for the plaintiff and the defendant's exceptions are to the denial of its motion for a directed verdict and the refusal of the trial judge to give some of its requests for rulings.

By the terms of the contract, the defendant agreed to "furnish, erect and remove sufficient scaffolding" to reach the walls and ceiling of the church which the painting concern was to paint.  The contract also included the "furnishing and placing" of fifty sixteen-foot planks.  The defendant concedes that the contract "includes implicitly the word 'suitable.'"  See *Hall* v. *Bates,* 216 Mass. 140, 142. The scaffolding consisted of upright posts that rested on the floor of the church, to which were nailed ledger boards, and the planks were "just laid on" the top of the highest ledger boards to form the platform upon which the painters worked.

The jury could have found that the work of installing the scaffolding was completed on the Thursday before the Monday on which the plaintiff was injured, that the plaintiff and the other employees began to use it on Saturday, and that on that day some of the planks were warped as much as one and one half inches.  The age of the planks was from one to five or ten years.  Planks of this character have a tendency as time goes on to warp or split, and a warp of over an inch or an inch and one quarter "would be considered dangerous."  Such a plank should be either discarded or shimmed, that is, a block or something should be

put under it to keep it from tipping, inasmuch as a warped plank has a tendency to tip, tilt or move when walked upon. Some of the planks that were used had to be shimmed. There was other evidence that before the plaintiff's injury, some of the planks were a "bit tippy," and that some of them were warped so that "when you put your foot on . . . [them, they] would wobble back and forth." Although there was evidence that prior to the plaintiff's injury some of the planks had been moved, there was no evidence that any of these had been shimmed or that the plank from which the plaintiff fell had been moved. Although there was evidence that planks sometimes warp and straighten out later and that this may happen in a matter of three hours, the jury were not required to believe this.

The plaintiff, who had been a painter for some twenty years and was also a licensed "rigger," testified that on Saturday, when the painting commenced, he noticed that some of the planks were warped. He worked a full day on Saturday and had worked three and one half hours on the Monday following before he was injured. At the time of his injury, he was painting the ceiling and had been working "on that particular plank from which he fell for about twenty minutes." He could feel that the plank was warped an inch or an inch and one half, "probably the width of two fingers"; he stepped on the plank, it tilted, moved, and threw him off balance, and he fell to the floor. He noticed that the plank on which he was working was warped about an inch and one half "just before he fell."

Where the owner of a scaffolding furnishes it for the use of an independent contractor, ordinarily he owes the same duty to an employee of the contractor that the owner would owe to his own employee using the scaffolding, and the employee in either case assumes all obvious risks in its use. *Gray* v. *Boston, Revere Beach & Lynn Railroad,* 261 Mass. 479, 482, and cases cited. See *Mulchey* v. *Methodist Religious Society,* 125 Mass. 487. We think it could have been found that some of the planks that were furnished by the defendant, including the one from which the plaintiff fell, were not suitable for their intended purpose, and, ac-

cordingly, that the defendant could have been found to be negligent. Furthermore, we are of opinion that it could have been found that, at the time the plaintiff was injured, he was working on a plank as it had been installed and left by the defendant when the scaffolding was completed. As already appears, there was no evidence that this plank had been moved. It seems that the ceiling of the church that was being painted, except over the balcony, could be reached by the scaffolding as erected. There was evidence that the workmen did not reach the ceiling over the balcony on Saturday, that, just before the plaintiff was injured, he had "completed a stretch and some of the others had not," and that there were no planks in the next section, the balcony section. From this and other evidence it would seem that the plaintiff had reached a point on the scaffolding near the balcony. In short, we think that the jury could have found that the plaintiff's fall was the result of the installation by the defendant of a plank that was not suitable for its intended purpose, in that it was too warped for safe use and had not been shimmed, and that, as a result, the defendant could be found to have been negligent in the installation.

The question of who was in control of the scaffolding at the time of the plaintiff's injury was gone into at the trial. From what has been said, the defendant could not relieve itself of the consequences of its failure to perform its duty to furnish a reasonably safe scaffolding, so long as that failure continued to operate and its result was the proximate cause of the plaintiff's injury, and this is so apart from the precise question as to who was in actual control at the time. See *Moynihan* v. *King's Windsor Cement Dry Mortar Co.* 168 Mass. 450, 453. The jury were told that the defendant was not responsible for a condition not created by it, and that if the defect arose while the scaffolding was not in its control, the plaintiff could not recover. Upon the evidence, the question of control, in so far as material, was one of fact.

The defendant has pleaded assumption of risk and contributory negligence. "'The question in each case is not whether the employee has actually observed and by a conscious act of the will assumed all of the risks involved,

but whether the risks are incident to and naturally grow out of the employment in which he is engaged, and are such as, taking his age, intelligence and experience into account, he must be held to have appreciated if he saw, and such as, if he did not see, he could have seen and understood if he had looked. If the risks are of this character, then they are said to be obvious, and the employee assumes them.'" *Simoneau* v. *Rice & Hutchins*, 202 Mass. 82, 84. We are of opinion that it cannot quite be said, as matter of law, that the risk was so obvious that the plaintiff assumed it. Each case must depend upon its own peculiar facts. Here we have a platform made up of loose planks. There was evidence that twenty-five or thirty per cent of the planks, when first laid on the scaffold, might be warped to some degree. The jury might conclude, from the nature of the materials used and what they were told about them, that the plaintiff, in the ordinary course of his work, could not reasonably expect a perfectly level and immovable platform, but despite this, he had a right to assume to a reasonable extent that planks would not be used that were warped to such a degree that they should not have been used, or if they were used, that they would be shimmed. He testified that, on the Saturday when he first went to work, he noticed that some of the planks were warped, and that they were used planks; that he did not give the scaffolding a complete examination, but thought that it was safe; that on Monday morning he was likewise satisfied; that when he looked at the plank in question he could see that it was warped, but could not tell whether or not it was shimmed; and that he could not look under the plank and did not realize it was going to tilt and throw him. The experience of the plaintiff is to be taken into account, but he had a right to rely to a reasonable extent upon the assumption that reasonably safe scaffolding had been provided. *Anderson* v. *Marrinan*, 202 Mass. 193, 196. It is true that obvious risks are assumed, even though they are unusual ones. *McCafferty* v. *Lewando's French Dyeing & Cleansing Co.* 194 Mass. 412, 414. If risks are obvious, the failure of an employee to make an inspection amounts to his tak-

ing his chances. *Rooney* v. *Sewall & Day Cordage Co.* 161 Mass. 153, 159. But we are of opinion that it was a question for the jury to determine whether the dangerous condition of the plank from which the plaintiff fell was obvious. *White* v. *William H. Perry Co.* 190 Mass. 99. *Donahue* v. *C. H. Buck & Co.* 197 Mass. 550, 553. *Crisafi* v. *Sells Floto Circus,* 262 Mass. 120, 123. Compare *Favereau* v. *Gabele,* 262 Mass. 118.

The question of whether the plaintiff was contributorily negligent was likewise a question for the jury.

There was no error in the denial of the defendant's requests for rulings. Except in so far as they have been covered by what has been said, they were amply dealt with in the charge to the jury.

*Exceptions overruled.*