LOUISE A. GAULD, administratrix, *vs.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.

Suffolk.    October 9, 1952. — February 2, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Negligence,* Independent contractor, One owning or controlling real estate, Ladder.

In an action against the owner of a building for the death and conscious suffering of an independent roofing contractor from a fall down an open air shaft of the building caused by a broken step of a ladder which was owned and controlled by the owner of the building and was being used by the roofer by agreement with the owner in doing repair work near the shaft, the appearance of the ladder after the accident and evidence that it had been continuously exposed to the weather for a

number of months before the accident would not warrant a finding that the break in the step was due to a defect which the owner in the exercise of reasonable care should have discovered or that there was a breach of the owner's duty to the roofer to use reasonable care to provide him with safe appliances; and the plaintiff could not recover.

TORT. Writ in the Superior Court dated February 18, 1948.

The action was tried before *Dowd*, J.

*Thomas H. Mahony,* (*Edward F. Mahony* with him,) for the defendant.

*Harold E. Magnuson,* (*Paul A. Good* with him,) for the plaintiff.

SPALDING, J. This is an action of tort in two counts for the death and conscious suffering of the plaintiff's intestate while he was engaged in repairing a roof on the defendant's building. The case was tried to a jury, and at the close of the evidence the judge granted the defendant's motion for a directed verdict on the second count, for conscious suffering, and submitted the case to the jury on the first count. There was a verdict for the plaintiff. The case is here on a consolidated bill of exceptions. The defendant's exceptions arise from the denial of its motion for a directed verdict on the first count, from rulings on evidence, and from portions of the charge. The plaintiff's exceptions relate to the direction of a verdict on the second count and to rulings on evidence.

We summarize the evidence as follows: Frederick Burgess, the plaintiff's intestate, hereinafter sometimes called Burgess, was engaged by one of the defendant's agents to repair a leak along the edge of the roof of the elevator house on the defendant's building on Clarendon Street, Boston. Burgess had conducted a roofing and rigging business for many years which included "steeple jack and flag pole work." In performing the work here involved Burgess was assisted by his son George. The elevator house rose for one and one half stories from the eleventh floor level and was reached by passing along an outside ledge on the eleventh floor level to a small metal roof partly covering an air shaft. To

go from this roof to the roof of the elevator house it is necessary to use a ladder. The ladder used for this purpose by the Burgesses was one which they found on the roof of the air shaft when they commenced to work. Work on the job commenced on Wednesday, June 25, 1947, and continued until Saturday when the accident occurred. During Wednesday, Thursday, and Friday both Burgess and his son worked on the job, but on Saturday Burgess went to the job alone. When he failed to return home later that night the police were notified, and George Burgess and one Abbott went to the defendant's building to look for him. They were admitted by the watchman and ascended to the roof covering the air shaft. Hearing heavy breathing and moaning, George with the aid of a flashlight looked into the well of the air shaft and "saw somebody down there whom he later identified as his father." Burgess, whose skull had been fractured, was taken to the Boston City Hospital where he died the following evening, June 29, 1947.

After going to the hospital with his father George returned to the scene of the accident with a police officer. He observed that the ladder was in the same position then as it was when it had been used by him and his father during the preceding three days; that there was a dent in the edge of the metal roof of the air shaft in front of the base of the ladder; and that a bag of his father's tools was on the air shaft roof to the left of the ladder. On the following day, June 29, a piece of wood was found "at the foot of the ladder or thereabouts" which had in some way broken off the front edge of the top step of the ladder.

A majority of the court are of opinion that the judge erred in submitting the case to the jury. Since it does not affect the result we assume that it could have been found that the ladder was owned and controlled by the defendant, and that Burgess, an independent contractor, was using it under a contractual arrangement with the defendant. In these circumstances the defendant would owe him the same duty that it owed to one of its own employees. *Pilling* v. *Hall*,

251 Mass. 425. *Brogna* v. *Capodilupo,* 279 Mass. 586, 590–591. *Keough* v. *E. M. Loew's, Inc.* 303 Mass. 364. *Barrett* v. *Builders' Patent Scaffolding Co. Inc.* 311 Mass. 41, 43. *Williams* v. *United Men's Shop, Inc.* 317 Mass. 319, 320. That duty is to exercise reasonable care to provide the employee with safe appliances. *Blohm* v. *Boston Elevated Railway,* 221 Mass. 390, 392. *McGonigle* v. *O'Neill,* 240 Mass. 262. *Mucha* v. *Northeastern Crushed Stone Co. Inc.* 307 Mass. 592, 595. We further assume that a finding was warranted that the broken step was the proximate cause of Burgess's death.

The evidence relied upon by the plaintiff on the issue of negligence was the ladder itself (which is before us as an exhibit); the testimony of George Burgess that he had seen the ladder on the roof in the autumn preceding the accident and that when he observed it three days before the accident "it appeared all right but had dirt and soot on it"; and the testimony of one Smith, the defendant's supervisor of maintenance, that he had never seen the ladder before trial. Unless the ladder was sufficient to tip the scales this did not amount to proof of negligence, for the fact without more that the ladder broke would not be sufficient. From an inspection of the ladder the jury could have inferred that it had been exposed to the weather; but the extent of the exposure is wholly speculative. The testimony of George Burgess is not enough to support an inference that the ladder had been on the roof continuously since the fall of 1946; nor would the case be any stronger in this respect if the witness Bassett had been permitted to testify that he had seen the ladder on the roof prior to the accident at some time in 1947. In any event, even if it be assumed that the ladder had been on the roof continuously for seven or eight months prior to the accident, which is the maximum period of time covered by the testimony, this would not justify the inference that such exposure would cause a defect of the sort here involved which the defendant ought in the exercise of reasonable care to have discovered.

The other aspect of the ladder's appearance which the

plaintiff stresses is the discoloration of one end of the surface exposed by the break. Although the discoloration may be the result of the action of water on the screw which fastened the step to the side of the ladder, there does not appear to be any greater deterioration of the wood in the discolored area than at any other part of the surface exposed by the break. In short the ladder itself does not suffice to establish that there was a defect in the step which would have been discoverable upon reasonable examination. The case differs from those in which there was evidence that the defect in the appliance was sufficiently apparent to be discoverable upon examination, but not so obvious as to avoid liability. *Crimmins* v. *Booth,* 202 Mass. 17. *Gray* v. *Boston, Revere Beach & Lynn Railroad,* 261 Mass. 479. *Keough* v. *E. M. Loew's, Inc.* 303 Mass. 364. *Barrett* v. *Builders' Patent Scaffolding Co. Inc.* 311 Mass. 41. *Wood* v. *National Theatre Co.* 311 Mass. 550. If it be assumed, as the plaintiff seems to argue, that it could have been found that no inspection of the ladder had been made because Smith, the supervisor of maintenance, testified that he had never seen the ladder prior to the trial — a doubtful assumption at best — the plaintiff's case is no stronger. There is still lacking sufficient evidence to warrant a finding that the defect was one which the defendant ought to have discovered in the exercise of reasonable care. We have carefully examined the many cases cited by the plaintiff and find nothing in them which is in conflict with what is here decided.

The plaintiff's exceptions require but brief discussion. Bassett, called by the plaintiff, testified that he had worked with Burgess at the defendant's building. He was then asked whether he had seen Burgess use the ladder at any time. On objection by the defendant this question was excluded. The plaintiff then offered to prove that the "ladder was on the defendant's premises during the calendar year prior to the accident on June 28, 1947, and was then seen there by this witness, and an exception to the ruling of the court in excluding this testimony was duly taken by the plaintiff." We pass by the point, urged by the

defendant, that the offer of proof did not conform to the question. The principal ground argued in support of the admissibility of this evidence is that it tended to show that the defendant owned, controlled, and furnished the ladder for use on the building. But in our view of the case that issue is of no importance. The basis of our decision that the defendant was entitled to a directed verdict is the lack of evidence which would warrant a finding of negligence. As stated above, we have assumed that the evidence would have warranted a finding of ownership and control by the defendant and that Burgess was using it by agreement with the defendant. It is further urged that this evidence would have a bearing on the defendant's knowledge of its condition. We likewise assume that the defendant had an opportunity to know of the ladder's condition. But the existence of such an opportunity would not change the result on the issue of negligence on the evidence contained in this record.

The plaintiff's exception to the direction of a verdict on the count for conscious suffering must be overruled. Since recovery under that count depended on proof of negligence it stood no better than the count for death. With the count for conscious suffering out of the case, the plaintiff's exception relating to the exclusion of evidence bearing on that issue likewise must be overruled.

*Plaintiff's exceptions overruled.*
*Defendant's exceptions sustained.*
*Judgment for the defendant.*