JAMES P. FAHEY *vs.* ARNOLD OSOL.

Suffolk. October 8, 1958. — January 20, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & CUTTER, JJ.

*Negligence,* Rope, Contributory. *Evidence,* Relevancy and materiality.

Evidence that one in the business of leasing ropes, hooks and other equipment to painters for stagings had tested a rope upon its return from successive lessees by a visual and manual examination and observation of its fibres and had discovered no defect therein, although it had been attacked by acid and that fact would have been disclosed by a proper inspection, and that upon a further leasing of the rope to a painter it broke while supporting a staging of the lessee weighing about 600 pounds, although it was designed to support at least 5,400 pounds, warranted a finding that the lessor was negligent toward an employee of the painter upon whom the staging fell. [431–432]

In an action by a painter and licensed master rigger against one engaged in the business of supplying equipment to painters to recover for injuries sustained when a defective rope leased to his employer by the defendant broke while supporting a staging and caused the staging to fall upon the plaintiff, a ruling that as matter of law the plaintiff was guilty of contributory negligence was not required where, although there was evidence that the plaintiff made a visual examination of the rope before using it in rigging the staging and discovered no defect therein, it appeared that the rope was covered by dirt and that the defect was caused by acid which a visual examination would not disclose. [432–433]

In an action by an employee of a painter against one engaged in the business of leasing ropes for stagings to painters for short periods of time to recover for injuries sustained when a rope leased to the plaintiff's employer by the defendant broke while supporting a staging and caused the staging to fall upon the plaintiff, testimony by the plaintiff's expert witness as to what would be a proper test for rope before its use on a painter's staging was competent, but on the record it was reversible error to admit in evidence testimony by that witness that he had tested the tensile strength of the rope which broke, that it had lost between twenty-six and sixty-one per cent of its strength, and that at the Boston navy yard where he was employed rope which had lost thirty per cent of its strength was discarded. [433–434]

One engaged in the business of leasing rope to painters and riggers for use on stagings had a duty of exercising reasonable care to supply his lessees with safe and proper rope, but was not under an absolute responsibility to do so. [434–435]

TORT. Writ in the Superior Court dated June 19, 1953.
The action was tried before *Swift*, J.

*Roger B. Coulter,* (*Philander S. Ratzkoff* with him,) for the
defendant.

*Laurence D. Yont,* for the plaintiff.

RONAN, J. This is an action of tort brought by an in-
surer in the name of the plaintiff under G. L. c. 152, § 15,
the insurer having paid workmen's compensation to the
plaintiff for injuries sustained by him in the course of his
employment as a painter. His injuries resulted from the
collapse upon him of a staging caused by the breaking of
a rope supplied by the defendant to the plaintiff's em-
ployer. The jury found for the plaintiff and the case is
here upon the exceptions of the defendant.

The defendant conducted a one man concern renting
ropes, hooks and other equipment to painters. He had no
special technical training in the testing of ropes other than
the knowledge he acquired in the practical experience of
his business. He testified that when a rope was returned
from a lessee he would place it on the ground and observe
it, then run it through his hands and untwist it a short dis-
tance, about every ten feet, so as to inspect its core. He
so tested the rope which he rented to the plaintiff's employer,
one Kent, on June 24, 1952, upon its return from the pre-
vious renter. He testified that he saw nothing wrong with
it. It was a three quarters inch manila rope which he had
purchased new a few months before from a reputable dealer
and which had been used a few times when leased to Kent.
It was the standard size used by painters in erecting stag-
ings, and was designed to support from 5,400 to 5,820 pounds
in weight. Kent brought the rope to the site of the paint-
ing job. The plaintiff, a painter for thirty to thirty-five
years and a licensed master rigger since 1934, testified that
he laid the rope on the ground, observed it, and discovered
no defect in it, and then used it in erecting the staging.
After the staging was completed, he and another employee
lowered it to within two feet of the ground and both jumped
upon it to test it. While the staging was being used the

third morning after its completion, one of the ropes which supported an end of the staging broke permitting it to fall upon the plaintiff who was working under it, seriously injuring him.

It could have been found from the defendant's testimony regarding the short but continuous periods of leases during the early summer of 1952 that the rope was examined by the defendant not only on its return by the lessee immediately prior to Kent but also on the return by the successive lessees, after the rope, according to expert testimony, had sustained an attack by acid.

An expert, whose qualifications were not questioned and to whom the rope was turned over about three weeks after the accident, observed one complete fracture and four places which contained partial fractures of the strands, two consisting of two of the three strands and the rest of a single strand. He was of opinion that the complete break was due to an attack of acid which had occurred more than two months before his examination. He also tested the tensile strength of the rope. He demonstrated to the jury how one could discover the defect by untwisting the strands for a short distance but far enough to see the discoloration of the fibres caused by the acid. He also testified that the defect would be manifested by a manual examination which would appear from the brittleness of the rope. Whether a licensed rigger would discover it he did not know and he did not know the duties of such a rigger; "[m]any would not be able to find it." An examination of the rope by a licensed rigger might lead him to assume that the rope was safe. The expert further testified that there is a relatively simple test by feeling or observing a darkening of the fibre which was immediately apparent in his own examination of the instant rope.

The defendant contends that there was error in the denial of his motion for a directed verdict. We cannot agree. The fact that the rope broke under a strain slight in comparison to that which a sound rope should have been able to withstand is some evidence of the defendant's negligence. *Gra-*

*ham* v. *Badger*, 164 Mass. 42. See *Golden* v. *Mannex*, 214 Mass. 502, 504. And though it is not enough by itself to sustain a verdict in favor of the plaintiff, *Gauld* v. *John Hancock Mut. Life Ins. Co.* 329 Mass. 724, 727, *Nebraska Bridge Supply & Lumber Co.* v. *Jeffery*, 169 Fed. 609, 611, if coupled with evidence that the defect was discoverable by proper inspection, it is sufficient. *Graham* v. *Badger*, 164 Mass. 42. *Donahue* v. *C. H. Buck & Co.* 197 Mass. 550. *Doherty* v. *Booth*, 200 Mass. 522. *Hix* v. *New York Cent. & H. R. R.R.* 230 Mass. 309. The jury could find here, from the breaking of the rope supposed to support at least 5,400 pounds while being used as intended and while supporting about 600 pounds, on the third day after being delivered to Kent, that the rope was defective when delivered by the defendant to Kent, and that if the defendant made the visual and manual examination and the observation of the fibres he testified he did, he ought to have discovered its defects. Upon the soundness of the rope depended the lives and safety of those using the staging.

The second main contention of the defendant is that, if there was negligence upon his part in supplying the rope, there was also negligence on the part of the plaintiff in not discovering the defects and in using it to erect the rigging. This result does not necessarily follow. *Graham* v. *Badger*, 164 Mass. 42, 48. *Haskell* v. *Cape Ann Anchor Works*, 178 Mass. 485, 486–487. *Donahue* v. *C. H. Buck & Co.* 197 Mass. 550, 553. *Hix* v. *New York Cent. & H. R. R.R.* 230 Mass. 309, 312. And see *Jones* v. *Pacific Mills*, 176 Mass. 354, 357. The jury could find that the plaintiff made a visual examination before using the rope for the rigging; that he could assume that the rope was safe; that the defect was not obvious; and, as has been said by this court, that the defect "was sufficiently apparent to be discoverable upon examination, but not so obvious as to avoid liability." *Gauld* v. *John Hancock Mut. Life Ins. Co.* 329 Mass. 724, 728, and cases cited. The jury could find that the plaintiff made only a visual examination of the rope before erecting the staging and that such an examination was not sufficient

to show that it had been attacked by acid which merely changed the coloring of the rope, which was covered by dirt. Whether he was acting carefully if he limited his examination to a visual one was for the jury to decide. In any event he had a right to rely to a certain extent upon the expectation that the defendant would supply a reasonably safe rope. *Donahue* v. *C. H. Buck & Co.* 197 Mass. 550, 553. In *Barrett* v. *Builders' Patent Scaffolding Co. Inc.* 311 Mass. 41, 45–46, the plaintiff, an experienced painter for twenty years and a licensed rigger, while working upon a scaffolding a plank of which he knew was warped, fell and was injured, but he was held not to have been negligent as a matter of law in using the scaffolding. See also *McCarthy* v. *Goodrum,* 292 Mass. 567, 568; *Lajeunesse* v. *Tichon's Fish & Fillet Corp.* 328 Mass. 528, 530–531.

As the negligence of the defendant presented a question of fact and it could not be ruled as matter of law that the defendant was not negligent or that the defendant had sustained the burden of showing contributory negligence of the plaintiff, the denial of the defendant's motion for a directed verdict was right.

The defendant's two exceptions to rulings on evidence are to permitting the plaintiff's expert to state what tests a rope should be subjected to before being used on a painters' staging and to the practice at the Boston navy yard (where the expert was an employee) of discarding rope that has lost more than thirty per cent of its strength. As to the first, the question was substantially what would be a proper test for rope before being used in a painters' rigging and was competent. *Moraski* v. *T. A. Gillespie Co.* 239 Mass. 44, 47.

The second exception was to the admission of evidence of the plaintiff's expert that he had tested the tensile strength of the rope and found that it had lost between twenty-six and sixty-one per cent of its strength, and further that it was the practice at the Boston navy yard to discard rope which had lost thirty per cent of its strength. The methods used and equipment employed, generally adopted by those

engaged in conducting business substantially similar to that conducted by the defendant, may be considered in determining the negligence of the defendant, *Robitaille* v. *Netoco Community Theatre of No. Attleboro, Inc.* 305 Mass. 265, 268, *Edgarton* v. *H. P. Welch Co.* 321 Mass. 603, 608–609; but there must be enough similarity to aid the jury and not to lead to some collateral inquiry — a matter usually resting in the discretion of the trial judge. *Veginan* v. *Morse*, 160 Mass. 143, 147–148. It does not appear in the instant case that there was enough similarity between the activities conducted at the Boston navy yard, even if confined to its dealing with rope, and the defendant's business as to make the business of the former a guide for the latter. Furthermore, there was no place in New England other than the Boston navy yard where there were appliances for testing the tensile strength of a rope. Certainly, a lessor, for short periods, of ropes to painters was not supposed to have equipment for testing the ropes before leasing them. This evidence should have been excluded.

The defendant excepted to that portion of the charge in which the jury were told that "the duty is on the defendant who furnished equipment to see to it that that equipment is reasonably safe for the purpose for which it is to be used." There are other references in the charge to this subject matter but they do not expressly or impliedly differ from the statement just quoted. That instruction places an absolute and positive duty upon the defendant to see that the rope furnished to employees of lessees was safe rather than a duty to use reasonable care and prudence to that end. The defendant would perform his full duty by exercising due care in selecting a rope suitable for the intended use. It was recently stated in *Gauld* v. *John Hancock Mut. Life Ins. Co.* 329 Mass. 724, 727, "That duty is to exercise reasonable care to provide the employee with safe appliances." See also *Mucha* v. *Northeastern Crushed Stone Co. Inc.* 307 Mass. 592, 595. The defendant is to be held not to an absolute responsibility for the defects in the rope which he supplied but only to the duty of exercising reasonable care in select-

ing and supplying Kent with a proper rope. See *Anderson v. Elgin, Joliet & E. Ry.* 227 F. 2d 91, 97–98 (7th Cir.), for a somewhat similar distinction. Compare *Affleck* v. *Chicago & No. W. Ry.* 253 F. 2d 249 (7th Cir.).

*Exceptions sustained.*