CARL DAVID CASEY v. J. CLAIBORNE BYRD, T/A/D/B/A ASSOCIATED SCAFFOLDING AND EQUIPMENT COMPANY.

(Filed 14 June 1963.)

**1. Master and Servant § 18;   Sales § 16—**

The person furnishing a scaffold for the use of painters in the painting of a ceiling twenty-five to thirty feet above the floor owes to the painters using the scaffold, independent of any contractual relationship, the duty to use proper care in the construction of the scaffold and to supply a reasonably safe structure, the instrumentality being inherently dangerous if not properly constructed.

**2. Same—**

Evidence tending to show that a tubular-type steel scaffold furnished by defendant fell because one of the crossarms bracing a section of the scaffold was not equipped with a safety lock takes the issue of defendant's negligence to the jury, and is sufficient to overrule motion for nonsuit.

**3. Same—**

Evidence that plaintiff workman was an apprentice painter and had had little or no experience with tubular-type scaffolding, that his foreman inspected the scaffolding, and that plaintiff had no control over it, does not disclose contributory negligence or assumption of risk as a matter of law on the part of plaintiff in using the scaffold which was not equipped with a safety lock on a crossarm brace, whether the defect was an obvious condition or was a concealed danger being a question for the jury.

APPEAL by plaintiff from *McKinnon, J.,* November 1962 Civil Term of DURHAM.

This appeal involves only the question of nonsuit. Plaintiff, an apprentice painter employed by J. D. Starkey Paint Company, was injured on June 18, 1956 when a scaffold furnished by defendant to Starkey collapsed, throwing plaintiff to the floor of the Hill Music Hall in Chapel Hill. Plaintiff instituted this action on June 17, 1959 alleging, *inter alia,* that the scaffold was unsafe and defective in that it was insecurely connected and braced. Defendant denied any negligence and alleged that the scaffold fell because of misuse by Starkey's

employees; that the condition of the scaffold was obvious and, if dangerous, both plaintiff and Starkey were guilty of contributory negligence and assumption of risk in using it.

Plaintiff's evidence, if accepted by the jury, was sufficient to establish the following facts:

Hill Hall is an auditorium with semicircular rows of opera-type seats and a floor which slopes from the back toward the stage. The height of the ceiling varies from thirty to thirty-five feet with the level of the floor. Defendant, according to his contract with Starkey, set up two scaffolds in the auditorium. The one upon which plaintiff was working was approximately twenty-five feet high. It was made of tubular steel rods, in five sections, either four feet or five feet high. The sections were placed in sockets, one on top of the other, to raise the scaffold to the desired height making a simple, web-type arrangement. The sections of scaffold were connected by crossarms. Each end of the crossarm fitted into a hole on the side of the scaffold and a locking mechanism, consisting of a hook and a piece of metal which flipped into it, kept the crossarm from coming out. The four legs of the bottom section were mounted on wheels which could be raised or lowered by a locking, screw-type arrangement so that the scaffold could be kept level as well as moved from place to place.

The scaffold had been moved by the Starkey painters several times since defendant had set it up prior to June 18, 1956. On the day of the accident, it had been used continuously from 8:00 a.m. and had been moved at least once. In moving the scaffold it was necessary to unfasten the braces and then put them back after it was moved. Each time it was moved the foreman on the job adjusted the wheels and inspected it. He thought it was perfectly safe when plaintiff mounted it, and plaintiff himself had no reason to think otherwise.

When the scaffold collapsed, about 4:00 p.m. plaintiff had been on it for about thirty-five minutes painting the ceiling. It partially folded into a point, like an accordian, and fell towards the wall throwing the plaintiff to the floor between the wall and the rows of seats on the south side of the building. He received multiple fractures of his feet in the fall.

The foreman then inspected the scaffold and observed that the crossarms had come out in two places on the bottom section. This rod did not have a safety hook on it as did all of the others which remained in place. In describing the crossarm which came out, the foreman said: "Well, these here is special rods on the bottom which is a homemade affair. It wasn't a patented scaffold, and it didn't have a hook on them like the rest of the stage had . . . I mean a little clamp to keep it from

coming out. In other words, a safety measure. That is what it is for. . . If crossarms remain in their sockets, a scaffold will not fold."

At the close of plaintiff's evidence defendant's motion for nonsuit was allowed and plaintiff appealed.

*Haywood and Denny and George W. Miller, Jr., for plaintiff appellant.*

*Bryant, Lipton, Bryant & Battle for defendant appellee.*

SHARP, J.  A scaffold, designed to be used by workmen painting a ceiling twenty-five to thirty feet above the floor, is an inherently dangerous instrument if not properly constructed. One who contracts to furnish a scaffold for such a purpose owes to those for whose use it is provided the duty to use proper care in its construction and to supply a reasonably safe structure. *Odum v. Oil Co.*, 213 N.C. 478, 196 S.E. 823; *Cathey v. Construction Co.*, 218 N.C. 525, 11 S.E. 2d 571; *Williams v. Stores Co., Inc.*, 209 N.C. 591, 184 S.E. 496.

The rule applicable to this case is stated in Annotation: Contractor's Servants — Contractee's Liability, 44 A.L.R. 932, 1049:

> "Where the defendant furnishes appliances to be used for a particular purpose with knowledge of such use, he is liable for a defect therein created by his own negligence, or negligently permitted to exist, where such negligence renders the appliance dangerous to life and limb of those who may use the same. Such liability exists independent of any privity of contract between the parties."

In *Coughtry v. Globe Woolen Co.*, 56 N.Y. 124, 15 Am. Rep. 387, a case in which a scaffold fell killing a workman, Rapallo, J., said: "It is evident from the nature and position of the structure that death or great bodily harm to those persons (for whose use it had been provided) would be the natural and almost inevitable consequence of negligently constructing it of defective material or insufficient strength. It was clearly the duty of the defendant and its agents to avoid that danger by the exercise of proper care. (Citations omitted). This duty was independent of the obligation created by the contract." See *Petty v. Print Works*, 243 N.C. 292, 90 S.E. 2d 717, where *Coughtry* is discussed.

Plaintiff's evidence, which we must accept as true in ruling upon the motion for nonsuit, is sufficient to establish that the scaffold fell because one of the crossarms bracing it was not equipped with a safety lock. Its credibility and the question of defendant's negligence were for

the jury. If the jury should answer the issue of negligence in plaintiff's favor, whether the defective brace was an obvious condition for which the plaintiff assumed the risk or was a concealed danger he could not have discovered in the exercise of reasonable care, will also be a question for the jury. Plaintiff testified that he was an apprentice painter and had had little or no experience with tubular-type steel scaffolding. His foreman testified that he himself inspected the scaffold and that plaintiff had no control over it. Plaintiff was not, as a matter of law, bound to look for hidden defects. *Gray v. Boston R. B. & L. R. Co.*, 261 Mass. 479, 159 N.E. 441; *Devlin v. Smith*, 89 N.Y. 470, 42 Am. Rep. 311; *Campbell v. Fong Wan*, 60 C.A. 2d 553, 141 P. 2d 43.

The judgment of nonsuit is

Reversed.